[No. B009417. Second Dist., Div. Seven. Nov. 19, 1985.]

HENRY RAYMOND BISETTI, Plaintiff and Appellant, v.
UNITED REFRIGERATION CORPORATION,
Defendant and Respondent.

**COUNSEL**

Eugene Fisher for Plaintiff and Appellant.

Kinkle, Rodiger & Spriggs, Robert N. Ridenour and John V. Hager for Defendant and Respondent.

OPINION

SCHWAB (H. J.), J.*—This case is an appeal from the granting of summary judgment in favor of a lessor, defendant and respondent United Refrigeration Corporation (hereinafter referred to as United), against a trespasser, plaintiff and appellant Henry Raymond Bisetti (hereinafter referred to as Bisetti). The issue involves whether an individual who is illegally present on leased property and who falls into a vat of acid while trespassing, can, under the factual posture set forth in the motion, recover against the landlord of said property.

■ "Summary judgment may only be granted if no material fact issue remains in the case. Where affidavits have been submitted by the opposing parties, any doubts as to whether summary judgment is proper should be resolved against the moving party. [Citation.]" (*Buehler* v. *Oregon-Washington Plywood Corp.* (1976) 17 Cal.3d 520, 526 [131 Cal.Rptr. 394, 551 P.2d 1226].) It is recognized that summary judgment is a drastic remedy and should be used with caution so that it does not become a substitute for an open trial. (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 111 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].) However, after careful examination of the within matter, summary judgment was definitely warranted herein.

*Facts*

On October 14, 1976, Clara Jane Monax leased to Jose Paredes, doing business as J. C. Paint Stripping (hereinafter referred to as J. C. Paint Stripping), certain real property which, by the terms of the lease, was to be utilized only for metal stripping and related activities. In 1978 this lease was assigned to respondent United. However, on or about April 19, 1981, 19-year-old appellant Bisetti illegally entered the property owned by United and leased to J. C. Paint Stripping. He climbed through a two or three foot "all around" hole in the fence surrounding the premises owned by United. Once on the premises Bisetti saw two large vats in a position approximately 20 feet from the hole in the fence which he had entered. The vats, abutting the wall of a building, were under the windows of the structure. One of the vats was observed by Bisetti to be heated by a flame. He smelled something like "a rotten egg," but could not tell from which vat the odor was emanating.

Bisetti was with a friend who was about two or three feet away from the vat. Bisetti wanted to look into the windows of the building, some of which

---

*Assigned by the Chairperson of the Judicial Council.

were broken. At least one of the vats had a piece of plywood on top of it which Bisetti thought was used to keep out the dirt. Bisetti climbed onto the platform of the unheated six-foot vat and then onto the plywood board covering its top. The plyboard held him for about two seconds and then it broke. Bisetti fell into the solution inside the vat which contained caustic soda, muriatic acid, methylene chloride and rust preventative. He was terribly burned, and ran off the premises, screaming in pain. Some concerned individuals hosed him down with water and paramedics were summoned. The burns went up to the top of Bisetti's legs, right below his groin.

Although there was conflicting evidence in the depositions as to whether there were any warning signs, for the purposes of determining the appeal from the granting of summary judgment it will be presumed that none existed. Since there were conflicting statements as to whether the hole in the fence Bisetti passed through onto the premises was a "couple of years" old or very recent, it will also be presumed for this appeal that the opening had been there for "a couple of years." (*Anaya* v. *Turk* (1984) 151 Cal.App.3d 1092, 1096 [199 Cal.Rptr. 187].)

The vice-president of United, James A. Henderson, filed a declaration in support of the motion alleging in pertinent part as follows: "UNITED REFRIGERATION CORPORATION LEASED the property in question at 3535 Fowler Street, Los Angeles, California to JOSE H. PAREDES, DBA J. C. PAINT STRIPPING and it was so leased at the time of the plaintiff's accident, April 19, 1981. The leased premises included only the building and land itself. UNITED REFRIGERATION CORPORATION has never occupied any part of the premises. Under the provisions of the lease and in actuality, UNITED REFRIGERATION CORPORATION did not exert any control over the premises or over J. C. PAINT STRIPPING's business. UNITED REFRIGERATION CORPORATION was unaware of the existence of the vats of solution which allegedly caused the plaintiff injury, of any prior breakins to the premises, of any prior injuries, or of any holes in the fence surrounding the perimeter of the premises."

Bisetti sued both United and J. C. Paint Stripping. Summary judgment was sought and granted only as to respondent United.

### Discussion

■ The standards relative to the liability of a landlord for injuries on his leased property were set forth in *Uccello* v. *Laudenslayer* (1975) 44 Cal.App.3d 504, 510-511 [118 Cal.Rptr. 741, 81 A.L.R.3d 628], in pertinent part as follows: "Historically, the public policy of this state generally has precluded a landlord's liability for injuries to his tenant or his tenant's

invitees from a dangerous condition on the premises which comes into existence after the tenant has taken possession. This is true even though by the exercise of reasonable diligence the landlord might have discovered the condition. [Citations.]

" . . . . . . . . . . . . . . . . . . . . . . .

"To this general rule of nonliability, the law has developed a number of exceptions, such as where the landlord covenants or volunteers to repair a defective condition on the premises [citations], where the landlord has actual knowledge of defects which are unknown and not apparent to the tenant and he fails to disclose them to the tenant [citation], where there is a nuisance existing on the property at the time the lease is made or renewed [citation], when a safety law has been violated [citation], or where the injury occurs on a part of the premises over which the landlord retains control, such as common hallways, stairs, elevators or roof [citation].

"A common element in these exceptions is that either at or after the time possession is given to the tenant the landlord retains or acquires a recognizable degree of control over the dangerous condition with a concomitant right and power to obviate the condition and prevent the injury. In these situations, the law imposes on the landlord a duty to use ordinary care to eliminate the condition with resulting liability for injuries caused by his failure so to act. [Citation.]"

■ The fact that the injured party might be a trespasser does not in and of itself preclude liability, although his trespassatory status is a proper consideration in determining liability. (*Mark* v. *Pacific Gas & Electric Co.* (1972) 7 Cal.3d 170, 183 [101 Cal.Rptr. 908, 496 P.2d 1276]; *Rowland* v. *Christian, supra,* 69 Cal.2d at p. 119; *Alva* v. *Cook* (1975) 49 Cal.App.3d 899, 903 [123 Cal.Rptr. 166].)

■ In this regard a landlord will not be held liable for the defective condition of materials placed on his property, by others, which are not a part of the premises. (*Goodman* v. *Harris* (1953) 40 Cal.2d 254, 263-264 [253 P.2d 447]; *Schwartz* v. *McGraw-Edison Co.* (1971) 14 Cal.App.3d 767, 782 [92 Cal.Rptr. 776, 66 A.L.R.3d 808], overruled on another point in *Ray* v. *Alad Corp.* (1977) 19 Cal.3d 22, 34 [136 Cal.Rptr. 574, 560 P.2d 3].)

■ In examining the aforementioned concepts, the courts have come to the conclusion that a landlord who has actual knowledge of a dangerous condition on his property should be held to owe a duty of care only when he has the right to prevent the presence of the dangerous condition on his

premises. (*Baldwin* v. *Zoradi* (1981) 123 Cal.App.3d 275, 293-294 [176 Cal.Rptr. 809]; *Rosales* v. *Stewart* (1980) 113 Cal.App.3d 130, 134 [169 Cal.Rptr. 660]; *Uccello* v. *Laudenslayer, supra,* 44 Cal.App.3d at p. 512.)

In *Uccello* there was a viable theory of liability on the part of the landlord wherein he knew of the vicious propensities of the dog owned by his tenants and he did nothing, either by ordering his tenants to get rid of the dog under pain of eviction or by actually getting rid of the tenants themselves. (*Uccello* v. *Laudenslayer, supra,* 44 Cal.App.3d at pp. 513-514.) However, the *Uccello* court stated: "For this reason we hold that a landlord is under no duty to inspect the premises for the purpose of discovering the existence of a tenant's dangerous animal; only when the landlord has *actual knowledge* of the animal, coupled with the right to have it removed from the premises, does a duty of care arise." (*Id.,* at p. 514, italics added.)

In the same manner in *Rosales* v. *Stewart, supra,* 113 Cal.App.3d at pages 134-135, it was held that a landlord can be held liable for a tenant's activity in firing guns on his property only if the landlord actually knows of such activity and can eliminate the dangerous condition by termination of the tenancy.

Thus, under the above authority, for Bisetti to have defeated the summary judgment motion, he must, at the very least, have been able to show some sort of liability based upon the existence of the vats of acid on the property or the existence of the hole in the fence. However, as before noted, James A. Henderson, a corporate officer of United, declared under penalty of perjury that United "was unaware of the existence of the vats of solution which allegedly caused the plaintiff injury, of any prior breakins to the premises, of any prior injuries, or of any holes in the fence surrounding the perimeter of the premises." This declaration remains unrefuted and, as such, is a proper basis for granting summary judgment. (*City of Los Angeles* v. *City of Artesia* (1977) 73 Cal.App.3d 450, 458 [140 Cal.Rptr. 684].)

Bisetti urges, however, that the author of the declaration did not begin his association with United until about 1980, while United became landlord of the subject property in 1978, two years before Mr. Henderson became a corporate officer. Further, he notes that United was doing business on the land next door to the subject premises of J. C. Paint Stripping.

Assuming these facts raise a counterinference that United was aware of the existence of the acid vats on these premises, such knowledge would not, by itself, constitute a basis for liability for the landlord. The premises had been leased to J. C. Paint Stripping for metal stripping activities. The acid vats were used for that purpose.

There is nothing in the record to reflect that any person would have been endangered by the vats unless that individual became immediately adjacent to them in an unsafe manner so as to touch and come in contact with their contents. Thus, the existence of the vats did not cause any danger to the public at large or even persons safely comporting themselves on the premises. The vats were no more dangerous than any normal mechanical equipment in industry, when used in the proper and cautious manner for which it is intended.

To hold that the existence of these vats is a dangerous condition, requiring that United either order J. C. Paint Stripping to get rid of the vats upon pain of termination of the lease, or evict the tenants in order to defeat liability in the case of an accident to trespassers under the bizarre factual scenario herein, could greatly inhibit the paint and metal stripping business. Such a ruling might well have the effect of severely limiting the leasing of properties to persons who deal with paint and metal stripping or it could cause rentals to be so high as to be prohibitive. The rights of trespassers, whatever they might be, should not create the potential of liability to such an extent that it seriously debilitates, if not prohibits, the practice of leasing property to lawful industry which does not endanger human life.

In light of the above discussion and circumstances, since the acid vats were part and parcel of the metal stripping operation, their existence would not, in and of itself, be considered such a dangerous condition as to be the basis of the imposition of liability upon a landlord having knowledge thereof, if an accident should occur to a trespasser.

In this regard, Bisetti urges that United should be liable on the basis of certain administrative regulations (since repealed) setting forth storage and notice requirements relative to hazardous waste. (Cal. Admin. Code, tit. 22, §§ 66535(f), 66370.) However, the chemicals used for the metal stripping would in no case fall within the definition of "hazardous waste" and, as such, their applicability is not in issue. (Health & Saf. Code, §§ 25117, 25122, 25122.5.)[1]

Assuming there were conflicting inferences as to whether United knew of the existence of the vats, said knowledge would not, by itself, be a proper basis for liability as to the lessor.

---

[1]Bisetti notes there should be a factual issue involved because United as a landlord was responsible for keeping insurance on the subject property. While we doubt the relevance of such an issue, it should be noted that in the lease the coverage was limited to "Fire and Extended Coverage" together with "insurance against vandalism and malicious mischief." In this regard, it is apparently connected with United's duty in the lease "to keep in good order, condition and repair the foundations, exterior walls and the exterior roof of the Premises." These areas of the premises have no relationship to Bisetti's accident.

■ As to the hole in the fence, United's lack of knowledge on that point remains totally uncontroverted. Under the lease agreement, the lessee, J. C. Paint Stripping, was responsible for the upkeep of the fences. Even if the hole had been there for a "couple of years," United would not have had any duty to inspect the fence for purposes of discovering any possible opening allowing unauthorized entry into the premises. (*Uccello* v. *Laudenslayer, supra,* 44 Cal.App.3d at p. 514.)

For the above reasons alone summary judgment was properly granted. ■ In addition, summary judgment was correctly granted by analysis of the factors enumerated in *Rowland* v. *Christian, supra,* 69 Cal.2d at pages 112-113, which "involves the balancing of a number of considerations; the major ones are the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved. [Citations.]"[2]

Utilizing the above balancing process, there is a definite incongruity in positing liability upon a landlord, under the particular factual posture of this case; where a trespasser illegally enters upon leased property, in sole control of lessee, where he climbs on top of lessee's plyboard over a vat of acid belonging to lessee, in order to look into a window of a building being leased to lessee, and where he falls into said lessee's vat, just because lessee's plyboard, apparently being used only to keep out dirt and not meant for a person to stand upon, breaks.

Bisetti contends that the trial court was "clouded" in its judgment and prejudiced against him. However, the record reflects a very clear thinking, careful analysis of the situation by the trial court in granting the motion.[3]

---

[2]The trial court considered these factors and made the following findings which we find convincing: "While under the rubric of 'duty' there are a number of considerations, here only one is at all factual—that is 'foreseeability of harm.' In this case that factor is extremely remote, given the illegal nature of plaintiff's activities. Other factors militate against any liability. There is no close connection at all between this defendant's conduct and the injury suffered. There is no moral blame whatsoever to attach to this defendant's conduct. Future harm would not be prevented by holding this defendant liable under these circumstances. While insurance might be available to cover injuries such as those plaintiff undoubtedly suffered, still, it is a burden to go to the expense of covering against such remote contingencies. Separately, here there is a great deal of moral blame on the part of plaintiff himself. Under such circumstances, the lessor should not be exposed to liability."

[3]Bisetti contends that the trial court was prejudiced against him, denominating him a

There being no triable factual issue, summary judgment was properly granted. The judgment is affirmed.

Lillie, P. J., and Thompson, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 14, 1986.

---

"burglar." However, the trial court merely stated that a trier of fact analyzing the total situation could easily conclude that he was illegally upon the leased premises to "burglarize the place." If, in fact, summary judgment had been denied and the matter had gone to trial against United, a reasonable trier of fact could well have made such an inference.