[No. B116311. Second Dist., Div. Three. Aug. 1, 2000.]

RUBEN MARTINEZ et al., Plaintiffs and Appellants, v.
BANK OF AMERICA NATIONAL TRUST & SAVINGS
ASSOCIATION, Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part V.B.

884

---

**COUNSEL**

Guzin & Steier and Lawrence N. Guzin for Plaintiffs and Appellants.

Haight, Brown & Bonesteel, Kevin R. Crisp, Thomas N. Charchut and Maureen Haight Gee for Defendant and Respondent.

---

**OPINION**

**KITCHING, J.—**

## I.

### INTRODUCTION

This appeal presents the issue whether a bank, which acquires real property through foreclosure but which does not have possession or control of the property, has a duty to inspect the property and remedy its defects. We conclude that the bank has a duty to inspect and remedy defects on the property only if it has actual knowledge of the defects and the ability to prevent foreseeable harm.

In this appeal, defendant bank purchased property in a foreclosure sale. The bank then commenced an unlawful detainer proceeding to attempt to evict the former owners, who retained occupancy and possession of the property. While the bank's unlawful detainer proceeding was pending, plaintiffs' young son entered the property, where he was attacked by dogs owned by the former owners. After their child died of injuries sustained in the attack, plaintiffs sued the bank for wrongful death. Plaintiffs appeal from the grant of summary judgment in the bank's favor.

In the published portion of this opinion, we conclude that plaintiffs' opposition to the summary judgment motion created no triable issue of fact regarding whether the bank had actual knowledge of the dangerous condition of the property. We also conclude that the pending unlawful detainer proceeding, and the former owners' refusal to relinquish possession and control of the property, meant that the bank did not have the authority, ability, or power to repair defects on the property. Because of this lack of knowledge and of power and based on the factors in *Rowland v. Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], we find that the bank owed no duty to plaintiffs. We therefore affirm the grant of summary judgment. The unpublished portion of the opinion addresses other issues.

## II.

### STANDARD OF REVIEW

"Any party may move for summary judgment in any action or proceeding if it is contended that the action has no merit or that there is no defense to the action or proceeding." (Code Civ. Proc., § 437c, subd. (a).) Separate statements setting forth plainly and concisely all material facts which the parties contend are undisputed must be included. (*Ibid.*) The trial court shall grant the summary judgment motion if all the papers submitted show that no triable issue as to any material fact exists and that the moving party is entitled to judgment as a matter of law. In determining whether the papers show that no triable issue exists as to any material facts, the court shall consider all of the evidence and all inferences reasonably deducible from the evidence, except that summary judgment shall not be granted on inferences reasonably deducible from the evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact. (*Id.*, subd. (c).)

A defendant meets its burden upon a summary judgment motion if that party has proved that "one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action." (Code Civ. Proc., § 437c, subd. (o)(2).) Once the defendant has met that burden, the "burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists[.]" (*Ibid.*; *Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 592-593 [37 Cal.Rptr.2d 653].)

A defendant moving for summary judgment may disprove at least one essential element of the plaintiff's cause of action or show that the plaintiff cannot establish an element of the cause of action. Once the moving

party has met that burden, the opposing party bears the burden of presenting evidence that there is a triable issue of fact as to any essential element of a cause of action. (*Sanchez v. Swinerton & Walberg Co.* (1996) 47 Cal.App.4th 1461, 1465 [55 Cal.Rptr.2d 415].)

III.

FACTUAL AND PROCEDURAL HISTORY

A.   *The Bank's Purchase of Property and Its Unlawful Detainer Action*

At a March 23, 1995, foreclosure sale, defendant Bank of America National Trust & Savings Association (the Bank) purchased property at 114 South Chester Avenue in Compton. The Bank acquired record title on April 24, 1995. On May 10, 1995, the Bank served a three-day notice to quit and deliver possession of the South Chester Avenue property on Charles Lindsey and Ophelia Lindsey (the Lindseys), who failed to give up possession of the property. On May 17, 1995, the Bank filed an unlawful detainer complaint against the Lindseys seeking, among other remedies, restitution of the premises. The Lindseys answered the complaint on May 28, 1995. On June 27, 1995, the trial court set a July 12, 1995, trial date for the unlawful detainer action.

B.   *The Martinez Action*

On June 13, 1995, before the unlawful detainer action had been set for trial, dogs on the 114 South Chester Avenue property attacked Gilberto Martinez, the son of plaintiffs Ruben Martinez and Maria Martinez (the Martinezes). The Martinez residence was located next door to 114 South Chester Avenue. Gilberto Martinez died of injuries he suffered in the attack.

The Martinezes filed a complaint against the Bank, Charles William Lindsey, and Ophelia Lindsey. It alleged causes of action for negligence, wrongful death, premises liability, and strict liability. The complaint alleged that the Lindseys operated a construction business on the South Chester Avenue property, which was guarded by a pack of large, dangerous dogs whose vicious propensities were known to their owners, the Lindseys, who occupied the property. The complaint also alleged that an inadequate fence surrounded the property, allowing the dogs to escape and allowing Gilberto Martinez to enter the property.

C.   *The Summary Judgment Proceeding in the Martinez Action*

The Bank moved for summary judgment in the Martinez action. The summary judgment motion cited public records showing that although the

Bank became record owner of the property on April 24, 1995, it did not obtain possession of the South Chester Avenue property from the Lindseys until after the attack on the child. The Bank argued that when the dog attack occurred, the Bank was trying to evict the holdover former owners. Thus the Bank argued that it owed no duty to the Martinezes and could not be liable for dangerous conditions on property of which it did not have possession. Cheryle Ackerman Griffin, a Bank of America real estate manager, stated in a declaration that the Bank did not know that the Lindseys' dogs ever previously bit or attacked anyone or were inclined to attack a child.

The trial court granted the Bank's request for judicial notice of pleadings and events in its unlawful detainer suit against the Lindseys in *Bank of America v. Lindsey*, Los Angeles County Municipal Court, Compton Judicial District, No. 95Q01147.

The Martinezes' opposition contained no separate statement of facts or evidence. Instead, the opposition stated that the Martinezes could not meaningfully oppose the summary judgment motion because facts essential to justify opposition might exist but could not then be presented. The opposition sought an order continuing a hearing on the motion to permit discovery. A declaration by the Martinezes' attorney stated that the Martinezes believed that the Bank's responses to previous discovery were evasive and incomplete, sought depositions of any witness the Bank's responses to discovery identified, and sought to propound follow-up discovery necessary to present facts in opposition to the summary judgment motion.

The trial court granted summary judgment in favor of the Bank. The trial court found that the Bank acquired title to the property and attempted to obtain possession from the Lindseys in an unlawful detainer action, but when the dog attack occurred on June 13, 1995, the Bank did not have an order of possession of the South Chester Avenue property. Therefore the Bank neither owed nor breached any duty to the Martinezes for the injuries alleged in the action. The Martinezes' appeal followed.

IV.

ISSUE

In the published portion of this opinion, we address whether the Bank owed a duty of care to plaintiffs.

## V.

### DISCUSSION

### A. *The Bank Owed No Duty to Plaintiffs*

The injury to the Martinezes' son occurred on property to which the Bank had acquired legal title in a foreclosure proceeding. The previous owners of the now foreclosed property, the Lindseys, refused to relinquish possession, continued to occupy the property, and contested the Bank's pending unlawful detainer proceeding. That proceeding did not conclude, and the Bank did not acquire possession of the property, until after the Lindseys' dogs attacked the Martinezes' child.

Although the Bank and the Lindseys did not have a landlord-tenant relationship, landlord-tenant tort liability cases offer a partial analogy to this situation. ▮▮▮ We find that if a landlord would not have been liable under these circumstances, neither would the Bank. We conclude that the landlord-tenant cases show that the Bank owed no duty to plaintiffs.

We also look to the analytical factors in *Rowland v. Christian, supra,* 69 Cal.2d 108 to decide whether public policy considerations make this a proper case for departing from the general rule in Civil Code section 1714, subdivision (a)[1] and excepting the Bank from that statutory duty. We conclude that the *Rowland v. Christian* factors do except the Bank from that duty.

#### 1. *Because the Bank Did Not Have Actual Knowledge of the Dangerous Condition of the Property and Did Not Have Possession or Control of the Property, the Bank Owed No Duty to Plaintiffs*

Several cases have adjudicated a landlord's liability for injuries caused by a tenant's dangerous dog. Although this appeal does not involve a landlord and tenant, these cases offer some guiding general principles. These cases show that a landlord will only be liable for those injuries if the landlord had actual knowledge of the dangerous dogs and had the ability to prevent foreseeable harm.

▮▮▮ *Donchin v. Guerrero* (1995) 34 Cal.App.4th 1832 [41 Cal.Rptr.2d 192] held that determining whether the landlord of noncommercial real

---

[1]Civil Code section 1714, subdivision (a), states, in relevant part: "Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself."

property owes a duty of reasonable care toward an injured third person involves a two-step analysis. First, we ask whether the landlord had actual knowledge that the dog was vicious. This element can be shown either by circumstantial evidence that the landlord *must* have known the dog was dangerous or by direct evidence that the landlord *actually* knew the dog was dangerous.[2] (*Id.* at p. 1838.) Second, we ask whether the landlord had the ability to prevent the foreseeable harm. That ability derives from the landlord's control over his property and his ability to prevent dangerous conditions on that property. (*Id.* at pp. 1838-1839.)

### 2. *The Bank Had No Knowledge of Dangerous Dogs*

Regarding the first step of the *Donchin* test, the summary judgment proceeding established that the Bank did not have actual knowledge that the dogs at the South Chester Avenue property were dangerous and had vicious propensities. A Bank real estate manager declared she was familiar with the Bank's purchase of the South Chester Avenue property and had reviewed the Bank's files on that residential property. The manager declared that as of June 13, 1995, she was unaware of any violent acts committed by the Lindseys' animals, was not aware that these dogs had bitten any person, and was not aware that the dogs were viciously inclined to attack children. The Martinezes' opposition provided no direct or circumstantial evidence to dispute or contradict this evidence of the Bank's lack of knowledge of previous dog attacks or of the dogs' allegedly vicious propensity. Thus the Martinezes failed to create a triable issue of fact that the Bank had actual knowledge that the dogs were vicious or dangerous, and this failure forms a proper basis for granting summary judgment. (*Bisetti v. United Refrigeration Corp.* (1985) 174 Cal.App.3d 643, 649 [220 Cal.Rptr. 209].)

Because the Bank had no knowledge of the dogs' allegedly vicious propensity, the harm was not foreseeable and the Bank had no duty to take measures to prevent the attack. (*Donchin v. Guerrero, supra*, 34 Cal.App.4th at p. 1838.) "[A] duty of care may not be imposed on a landlord without proof that he knew of the dog and its dangerous propensities." (*Uccello v. Laudenslayer* (1975) 44 Cal.App.3d 504, 514 [118 Cal.Rptr. 741, 81 A.L.R.3d 628]; see also *Lundy v. California Realty* (1985) 170 Cal.App.3d 813, 821 [216 Cal.Rptr. 575].) Pursuant to *Uccello*, moreover, because the

---

[2]*Donchin* clarifies that the "must have known" element is not the same as constructive knowledge. Although circumstantial evidence may show that the landlord must have known of the dog's vicious propensities, this "inference must reflect the landlord's actual knowledge and not merely constructive knowledge or notice." (*Donchin v. Guerrero, supra*, 34 Cal.App.4th at p. 1839.) Only where the circumstances show that the defendant " ' "must have known" ' " and not " ' "should have known" ' " will an inference of actual knowledge be permitted. (*Ibid.*)

Bank had no knowledge of the dangerous dogs, it had no duty to inspect the South Chester Avenue property: "a landlord is under no duty to inspect the premises for the purpose of discovering the existence of a tenant's dangerous animal; only when the landlord has actual knowledge of the animal, coupled with the right to have it removed from the premises, does a duty of care arise." (*Ucello, supra,* at p. 514.)

### 3. The Bank Had No Ability to Prevent the Dangerous Condition on the Property

With regard to the second step of *Donchin,* a landlord's ability to prevent foreseeable harm derives from the landlord's control over his property and his ability to prevent dangerous conditions on that property. In a dog bite case, therefore, "the injuries the dogs cause must be ones which would not have occurred if the landlord had taken actions which were within his power. In the cases of dangerous dogs, that potential power is found in whatever rights the landlord may have to insist the tenant remove the dogs from the leased premises or to insure the property is so secure the dogs cannot escape to harm persons on or off the property." (*Donchin v. Guerrero, supra,* 34 Cal.App.4th at p. 1839.)

Thus, when a landlord has actual knowledge of a dangerous condition on his property, that landlord owes a "duty of care only when he has the right to prevent the presence of the dangerous condition on his premises." (*Bisetti v. United Refrigeration Corp., supra,* 174 Cal.App.3d at pp. 648-649.) A landlord's knowledge of the tenant's dangerous acts is not enough; "the landlord must also have the opportunity and the ability to eliminate the dangerous condition being created by the tenant." (*Rosales v. Stewart* (1980) 113 Cal.App.3d 130, 134 [169 Cal.Rptr. 660].) Where a landlord has "no control or authority" over a dangerous condition of property, it cannot be held liable for injuries caused by that dangerous condition of property. (*Mark v. Pacific Gas & Electric Co.* (1972) 7 Cal.3d 170, 179 [101 Cal.Rptr. 908, 496 P.2d 1276].) Where a landlord gives up possession of leased premises to tenants, the landlord likewise gives up the ability to directly and promptly control the conditions existing on that property. (*Leakes v. Shamoun* (1986) 187 Cal.App.3d 772, 776 [232 Cal.Rptr. 171].)

The analogy to landlord liability cases stems from the fact that, like a landlord, the Bank owned legal title to the South Chester property but did not have possession or control of its property. Compared to a landlord, however, the Bank had a more restricted choice of remedies, as no lease existed which the Bank could terminate or refuse to renew unless the Lindseys got rid of their dogs. (*Bisetti v. United Refrigeration Corp., supra,*

174 Cal.App.3d at p. 649, citing *Uccello v. Laudenslayer, supra,* 44 Cal.App.3d at pp. 513-514; see also *Donchin v. Guerrero, supra,* 34 Cal.App.4th at p. 1847.) Even though no lease existed, the Bank did have one remedy that would also be available to a landlord. The Bank could seek to oust the Lindseys from possession in an unlawful detainer proceeding. (Code Civ. Proc., § 1161a, subd. (b).) But until a judgment was obtained and satisfied in that unlawful detainer proceeding, the Bank did not have the ability to directly and promptly control conditions existing on the South Chester Avenue property occupied by the Lindseys. (See *Leakes v. Shamoun, supra,* 187 Cal.App.3d at p. 776.) For that reason, the Bank had no duty to the Martinezes.

The Martinezes primarily rely on *Portillo v. Aiassa* (1994) 27 Cal.App.4th 1128 [32 Cal.Rptr.2d 755], which holds: "a landlord has a duty to exercise reasonable care in the inspection of his commercial property and to remove a dangerous condition, which includes a dog, from the premises, if he knew, or in the exercise of reasonable care would have known, the dog was dangerous and usually present on the premises." (*Id.* at p. 1132.)

In *Portillo,* the plaintiff delivered beer to a liquor store which was open to the general public. As he left the store, a German shepherd dog owned by the tenant, Mr. Kim, attacked the plaintiff, who suffered severe injuries. Plaintiff Portillo sued Kim and the landlord, Aiassa. A jury found that Aiassa did not have actual knowledge of the dog's dangerous propensities before renewing the lease, but that if Aiassa had exercised reasonable care in inspecting his property he would have learned of the dog's dangerous propensities. The jury also found Aiassa negligent in failing to eliminate the dangerous condition. The landlord appealed, claiming the trial court erroneously instructed the jury on a landlord's duty of care. (*Portillo v. Aiassa, supra,* 27 Cal.App.4th at pp. 1132-1133.)

*Portillo* cited the rule that a landlord owes a duty of care to a tenant to provide and maintain safe conditions on leased premises. The landlord's duty of care extends to the general public where the lessor leases property for a purpose involving the admission of the public. The landlord's duty of care includes seeing that the property is safe for the purposes intended and exercising reasonable care to inspect and repair the premises before possession is transferred so as to prevent an unreasonable risk of harm to the public who may enter. Furthermore, an agreement to renew a lease cannot relieve the lessor of his duty to see that the premises are reasonably safe at that time. (*Portillo v. Aiassa, supra,* 27 Cal.App.4th at p. 1134.)

*Portillo* differs from the case at bench in several ways. The Bank was not the lessor of property where the dog attack occurred. The Bank did not lease

that property for a purpose involving admission of the public. The Bank did not renew or relet the property or transfer possession of it pursuant to a lease. Most importantly, the issue in *Portillo* was the landlord's knowledge of the dangerous condition of the property; the landlord in *Portillo* did not raise any issue about whether he had the right to have the dog restrained or removed from the premises before the lease was renewed. (*Portillo v. Aiassa, supra*, 27 Cal.App.4th at p. 1133, fn. 4.)

With regard to the Bank's power to prevent dangerous conditions on its property, it was undisputed that the Lindseys contested the unlawful detainer action and that the Bank had not obtained possession of the South Chester Avenue property on the date the dogs attacked the Martinezes' child. Without possession, the Bank did not control the property and did not yet have the ability to restrain or remove dogs from the premises. Possession and control form the basis for imposing tort liability for conditions on land. (*Preston v. Goldman* (1986) 42 Cal.3d 108, 119 [227 Cal.Rptr. 817, 720 P.2d 476].) Until the unlawful detainer action reached a judgment, the Bank lacked the power to remedy the defect by repairing allegedly defective fencing or evicting allegedly vicious dogs. We conclude that under the second *Donchin* requirement, the Bank lacked the ability to prevent foreseeable harm.

The Martinezes have not created a triable issue of fact as to either *Donchin* requirement. Therefore, under *Donchin*, the Bank had no duty to the Martinezes.

Because *Donchin* and the landlord-tenant cases offer only a partial analogy to this case, which does not involve a landlord and tenant, we further analyze the question of duty under the factors in *Rowland v. Christian, supra*, 69 Cal.2d. 108.

*4. The Factors in Roland v. Christian Justify Finding That the Bank Owed No Duty of Care to Plaintiffs*

■ The court determines whether a duty of care exists as a question of law. (*Sharon P. v. Arman, Ltd.* (1999) 21 Cal.4th 1181, 1188 [91 Cal.Rptr.2d 35, 989 P.2d 121].) Civil Code section 1714 states the rule that all persons are responsible for an injury caused to another by their want of ordinary care or skill in the management of their property. (*Rowland v. Christian, supra*, 69 Cal.2d. at p. 119.) Exceptions to this fundamental principle of negligence law will be made only when based in a statute or when clearly supported by public policy. (*Id.* at p. 112.)

"A departure from this fundamental principle involves the balancing of a number of considerations; the major ones are the foreseeability of harm to

the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Rowland v. Christian, supra,* 69 Cal.2d. at pp. 112-113.)

### a. *Foreseeability*

Foreseeability is a crucial factor in determining whether a defendant owes a duty of care. (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 676 [25 Cal.Rptr.2d 137, 863 P.2d 207].) The court's task in determining duty is not to decide whether a particular plaintiff's injury was reasonably foreseeable in light of a particular defendant's conduct. Instead the court evaluates more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may be appropriately imposed on the negligent party. (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 572-573, fn. 6 [224 Cal.Rptr. 664, 715 P.2d 624].) What is "sufficiently likely" means what is " 'likely enough in the setting of modern life that a reasonably thoughtful [person] would take account of it in guiding practical conduct.' " (*Bigbee v. Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 57 [192 Cal.Rptr. 857, 665 P.2d 947].)

In the absence of prior similar incidents—i.e., previous attacks by vicious dogs at the South Chester Avenue property—the requisite degree of foreseeability rarely, if ever, can be proven in the absence of prior similar incidents. (*Ann M. v. Pacific Plaza Shopping Center, supra,* 6 Cal.4th at p. 679; see also *Sharon P. v. Arman Ltd., supra,* 21 Cal.4th at pp. 1190-1191.) A duty to take affirmative action to control a third party's wrongful acts will be imposed only where such conduct can be reasonably anticipated. (*Id.* at p. 1189.) The evidence shows no prior incidents, by vicious dogs or otherwise, at the South Chester Avenue property. The Martinezes submitted no evidence supporting a finding that the dogs' attack on their child was foreseeable.

Determining the scope of a defendant's duty of care, moreover, partly involves balancing the foreseeability of the harm against how burdensome, vague, and efficient the duty to be imposed would be. Where preventing future harm imposes a great burden, the law may require a high degree of foreseeability. On the other hand, where strong policy reasons justify preventing the harm or simple means can prevent the harm, the law may require

a lesser degree of foreseeability. (*Ann M. v. Pacific Plaza Shopping Center, supra*, 6 Cal.4th at pp. 678-679.)

■ Under the circumstances, where the Bank did not yet have possession or control of the property and had instituted unlawful detainer proceedings to oust a former owner who contested ownership of the property, we are unable to determine what measures the Bank should have taken to correct a defect on the property of which it was not aware or to prevent an injury which had never occurred before. Foreseeability, when analyzed to determine the existence or scope of a duty of care, is also a question of law to be decided by the court. (*Sharon P. v. Arman, Ltd., supra*, 21 Cal.4th at p. 1188.) This factor weighs against imposing a duty of care on the Bank as to the Martinezes.

b. *Certainty That Plaintiffs Suffered Injury*

There is no doubt that the Martinezes suffered injury.

c. *Closeness of Connection Between Defendant's Conduct and the Harm Suffered*

The Bank's conduct has no close connection to the injury suffered. The Bank did not have knowledge of allegedly vicious dogs on the property and did not own or control those dogs. It did not have possession, power, and control over the South Chester Avenue property. The Bank's lack of exclusive, direct control over the property or the dogs diminishes the Bank's connection to what caused the Martinezes' injury. (See *Leakes v. Shamoun, supra*, 187 Cal.App.3d at p. 777.)

d. *Moral Blame*

■ For the same reason, we are unable to perceive any moral blame on the Bank's part. "Moral blame has been applied to describe a defendant's culpability in terms of the defendant's state of mind and the inherently harmful nature of the defendant's acts. To avoid redundancy with the other *Rowland* factors, the moral blame that attends ordinary negligence is generally not sufficient to tip the balance of the *Rowland* factors in favor of liability. [Citation.] Instead, courts have required a higher degree of moral culpability such as where the defendant (1) intended or planned the harmful result [citation]; (2) had actual or constructive knowledge of the harmful consequences of their behavior [citation]; (3) acted in bad faith or with a reckless indifference to the results of their conduct [citations]; or (4) engaged in inherently harmful acts [citation]." (*Adams v. City of Fremont* (1998) 68 Cal.App.4th 243, 270 [80 Cal.Rptr.2d 196].)

The Martinezes make no showing as to any of these four factors. The Bank had no knowledge of the property defects or of allegedly vicious dogs. It lacked control of the South Chester Avenue property and consequently lacked the power to remedy these dangers. Therefore under *Adams* no moral blame attaches to the Bank by failing to do so.

### e. *Preventing Future Harm*

A policy favoring preventing death by injury to children has extremely high value. The question, however, is whether imposing liability on the Bank would advance that valuable policy in any concrete or practical way, particularly given the remote or nonexistent connection between the Bank's conduct and the Martinezes' harm. Other than the step the Bank did take—bringing a legal action to evict the former owners—we have difficulty articulating what steps the Bank should or could take to repair an allegedly defective fence or to remove dogs owned by the occupier of property who contested possession of that property.

### f. *The Burden to Defendant and Consequences to the Community of Imposing a Duty to Exercise Care with Resulting Liability for Breach, and the Availability, Cost, and Prevalence of Insurance for the Risk Involved*

With regard to these factors, it seems likely that costs of various kinds, including insurance, would rise as a result of imposing a duty on the Bank in these circumstances.

### g. *Conclusion*

These factors lead us to conclude as a matter of law that the Bank had no duty to the Martinezes. The absence of duty ends the analysis of liability. (*Nola M. v. University of Southern California* (1993) 16 Cal.App.4th 421, 427, fn. 3 [20 Cal.Rptr.2d 97]; *Ann M. v. Pacific Plaza Shopping Center, supra,* 6 Cal.4th at p. 674.) We therefore conclude that the trial court correctly granted summary judgment.

### B. *No Error Arose from the Denial of a Continuance**

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 883.

## VI.

### DISPOSITION

The judgment is affirmed. Costs on appeal awarded to defendant Bank of America.

Croskey, Acting P. J., and Schneider, J.,* concurred.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.