[No. D003704. Fourth Dist., Div. One. Dec. 3, 1986.]

JOSEPH L. LEAKES, JR., Plaintiff and Appellant, v.
YOUSIF SHAMOUN, Defendant and Respondent.

**COUNSEL**

Michael D. McGlinn for Plaintiff and Appellant.

Jenkins & Perry and Joseph P. Rosati for Defendant and Respondent.

**OPINION**

**LEWIS, J.**—Joseph L. Leakes, Jr., appeals from a judgment of dismissal after the trial court sustained without leave to amend the demurrer of Yousif Shamoun to his complaint. Leakes sought damages for personal and pecuniary injuries sustained when he was shot in the head at 1 a.m. while standing outside the door of an arcade located in a high crime area. Shamoun was the owner of the premises on which the arcade was located. For the reasons set forth below, the judgment must be affirmed.

Since the demurrer was sustained, the following allegations of the complaint must be taken as true. (*O'Hara* v. *Western Seven Trees Corp.* (1977) 75 Cal.App.3d 798 [142 Cal.Rptr. 487]; *Stanson* v. *Brown* (1975) 49 Cal.App.3d 812, 814 [122 Cal.Rptr. 862].)

About 1 a.m. on January 26, 1983, Leakes was immediately outside the front door of Mr. J's Arcade.[1] The arcade had been the target of prior drive-

---

[1] While the complaint alleges that the incident occurred at 1 p.m., it is obvious this was a typographical error and that Leakes meant to allege that the incident occurred at 1 a.m. Otherwise his argument that Shamoun failed to provide proper lighting would make no sense. Accordingly, we will treat the complaint as if it alleged the incident occurred at 1 a.m.

by shootings, burglaries, gang-related activities, and was being used after hours by employees, ex-employees and their friends. Obie Goodlow was the manager of the arcade and was residing in the arcade for security purposes.

From inside the arcade Goodlow fired a .357 Magnum. The bullet Goodlow fired hit Leakes in the head and he is now blind.

The arcade was operated by James and Jacquelyn Sanders and Goodlow was their employee. Goodlow was a convicted felon and it was unlawful for him to be in possession of the .357.

The Sanderses had leased the premises from Shamoun, on March 21, 1982. On November 15, 1982, Shamoun served the Sanderses with a three-day notice to quit for failure to pay the $350 in monthly rent which was due. On December 8, 1982, Shamoun filed an unlawful detainer action against the Sanderses. At the time of the shooting, the Sanderses' utilities bill, like their rent, was overdue and the electricity at the arcade had been turned off.

Leakes alleges that when Goodlow fired his gun, he could not see Leakes or what Leakes was doing. According to Leakes, had the premises been properly lighted at the time of the shooting Goodlow would not have fired at the door where Leakes was standing. Leakes believes Shamoun is liable to him because Shamoun failed to take steps to assure that the premises were adequately lighted at the time of the shooting.

### DISCUSSION

Civil Code section 1714 provides: "(a) Everyone is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person."

The principle embodied in this code section serves as the foundation of our negligence law. (*Rowland v. Christian* (1968) 69 Cal.2d 108, 112 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].) Any exception to the duty set forth in section 1714 involves the balancing of a number of considerations: "[T]he major ones are the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability

for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Id.*, at p. 113.)

In performing the balancing required by *Rowland,* the Supreme Court recently emphasized that, "we have placed major importance on the existence of possession and control as a basis of tortious liability for conditions on the land." (*Preston* v. *Goldman* (1986) 42 Cal.3d 108, 119 [227 Cal.Rptr. 817, 720 P.2d 476].) ▮ Thus, while in *Rowland* the court found that possessors of land are subject to the duty of care set forth in section 1714, those who hold only nonpossessory interests in land have not been fully bound by its obligations. For instance, in *Uccello* v. *Laudenslayer* (1975) 44 Cal.App.3d 504 [118 Cal.Rptr. 741, 81 A.L.R.3d 628], the court held that landlords do not have any obligation to discover the vicious propensities of a dog owned by one of their tenants. (*Id.* at p. 514.) Moreover, when a landlord has actual knowledge of a dangerous condition, the courts have recognized that his ability to remove the condition might be hampered by his tenants' rights under a lease. Thus, in addition to showing actual knowledge of a dangerous condition, an injured person must also show that the landlord had the right and ability to cure the condition. (*Id.* at p. 514; *Rosales* v. *Stewart* (1980) 113 Cal.App.3d 130, 134 [169 Cal.Rptr. 660].) When, by way of an outright sale in fee, a landowner gives up of any color of control over real property, he is relieved of further liability. (*Preston* v. *Goldman, supra,* 42 Cal.3d at p. 126.)

## SHAMOUN'S CONTROL

▮ By giving up possession of the premises to the Sanderses, Shamoun necessarily gave up the ability to directly and promptly control the conditions which existed on his land at the time of Leakes's injury. Shamoun did not have direct control over his tenants' security guard. His only power over Goodlow was by way of an eviction proceeding against the Sanderses, which, according to the complaint, was underway at the time of the shooting.

Nor did Shamoun have immediate control over the lighting that existed on the premises at 1 a.m. on the day of the shooting. Shamoun had no duty to pay the Sanderses' delinquent power bill so the type of lighting installed by Shamoun would not have mattered. Even if the power bill had been paid, Shamoun would still have to overcome the Sanderses' possession to assure himself that the Sanderses and their employees turned the lights on and kept them on throughout the night.

## DUTY UNDER ROWLAND

Given the level of control that could be expected from Shamoun, a balancing of considerations set forth in *Rowland* relieves him of any liability to Leakes.

In this case foreseeability depends upon Leakes's allegations that the arcade was located in a high crime area, that it was the subject of previous burglaries and drive-by shootings and was used after hours by employees and nonemployees. These facts make it foreseeable that visitors to the arcade might be injured by criminals. (See *Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 130, 131 [211 Cal.Rptr. 356, 695 P.2d 653].) If it is foreseeable that crime will occur on given premises, it is also foreseeable that, in response to the dangerous locale, a security guard might overreact and, as here, negligently or recklessly fire his gun. (See *Bigbee* v. *Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 58 [192 Cal.Rptr. 857, 665 P.2d 947].)

However, it is important to recognize that in this case foreseeability is a two-step process: First, one must foresee the danger posed by the locale; next, one must foresee the danger posed by an armed security guard employed to mitigate the initial danger. The foreseeability of the second danger depends upon existence of the first.

The foreseeability of the secondary danger depends also on the degree of control the defendant has over the premises. If the defendant's control is exclusive, it is fair to expect that he knew something about the security guard's experience, background, job performance and whether he is armed. If, as here, the defendant is a landlord with indirect control over the premises and the security guard, the foreseeability of harm is less clear: The landlord will have less opportunity to investigate the guard's background or observe his job performance. Thus, while we cannot, as a matter of law, say that Leakes's injury was unforeseeable (*Isaacs* v. *Huntington Memorial Hospital, supra,* 38 Cal.3d at pp. 130-131), we must nonetheless recognize that Shamoun's ability to foresee the danger was limited in his role as a landlord.

On this demurrer, there is of course no question that Leakes was injured. There is, however, a substantial question about the connection between Shamoun's alleged conduct and Leakes's injury. Like foreseeability, the connection between Shamoun's conduct and plaintiff's injury is diminished by the limited control Shamoun could exercise as a landlord. According to Leakes, Shamoun is liable because he failed to assure that there was proper lighting at the time of the shooting. However, the most direct cause of Leakes's injury was Goodlow's conduct, over which Shamoun had little, if any, influence. At best, lighting was only a secondary cause of plaintiff's injury. As we have already seen, in view of the Sanderses' tenancy, Shamoun did not have direct and exclusive control over lighting at the arcade. The connection, then, between injury and conduct is indirect and limited.

It is difficult to assess blame against a landlord who does not monitor the lighting outside of commercial premises during the early hours of the morn-

ing. It is even more difficult to assess blame for his failure to pay his tenant's power bill.

Imposing liability on someone who has such limited control over the causes of an injury is not likely to advance the policy of preventing future harm. Because Leakes would hold Shamoun liable for circumstances over which Shamoun had so little control, the burden Leakes asks us to impose is heavy.

While we might assume for purposes of this appeal that premises liability insurance is available, that factor standing alone will not support creation of a duty.

Given the blurred foreseeability of Leakes's injury, the clouded connection between the injury and Shamoun's conduct, the lack of moral blame and the burden that would be created if we were to find a duty, we do not believe Leakes can state a claim against Shamoun.

### LEAVE TO AMEND

■ In affirming the judgment of the trial court, we recognize that Leakes was never given an opportunity to amend his complaint. We also recognize that if there was reasonable opportunity for him to state a claim against Shamoun, he should have been given leave to do so. (*Call* v. *Kezirian* (1982) 135 Cal.App.3d 189 [185 Cal.Rptr. 103].) However, given the particular factual allegations of the complaint and the applicable substantive law, we do not believe the trial court abused its discretion in denying leave.

As our analysis of the complaint indicates, Shamoun's liability to Leakes hinges upon the degree to which Shamoun exercised control over the conditions which caused Leakes's injury. As we have seen, the primary cause of Leakes's injury was Goodlow's conduct.

Leakes has alleged that at the time of his injury the Sanderses' rent was three months overdue and that an unlawful detainer action was pending. In light of the Sanderses' failure to meet their most basic obligation to Shamoun, we do not believe it is reasonable to expect that Leakes will be able to allege that Shamoun had any appreciable control over Goodlow, the Sanderses' employee. Without some significant control over Goodlow, we do not believe that under the principles set forth in *Rowland* and *Preston* it is possible for Leakes to state a claim against Shamoun.

Judgment affirmed.

Kremer, P. J., and Riggs, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.