[No. A099320. First Dist., Div. Four. Jan. 30, 2003.]

LICCET GUZMAN MATA, a Minor, etc., Plaintiff and Appellant, v. MARIO MATA et al., Defendants and Respondents.

[No. A099340. First Dist., Div. Four. Jan. 30, 2003.]

FRANCISCO RODRIGUEZ, Plaintiff and Appellant, v. MARIO MATA et al., Defendants and Respondents.

**COUNSEL**

Law Offices of Frank J. Christy, Jr., and Frank J. Christy, Jr., for Plaintiff and Appellant Liccet Guzman Mata.

Law Offices of Eric G. Young and Eric G. Young for Plaintiff and Appellant Franciso Rodriguez.

Law Offices of Mark R. Mittelman, Mark R. Mittelman and Joan Deborah B. Edelsohn for Defendants and Respondents

**OPINION**

**REARDON, J.**—Shots fired into El Rio Bar from directly outside the front door killed one person and injured two others. The shots were fired right after an angry patron, who had been permanently banned from the premises, had been escorted out of the door for the second time that evening. Although

a security guard was on duty with the responsibility of checking for weapons, no weapons had been apprehended from the banned patron. Although the premises included a small parking lot, the banned patron was never escorted out of the lot. We conclude that triable issues of material fact exist concerning the liability of the proprietor for the injuries and wrongful death, and accordingly reverse the summary judgment as to him. However, we also conclude that the trial court properly entered summary judgment in favor of the owner of the land, who was not in possession of the premises.

## I. Factual Background

### A. *El Rio Bar*

El Rio Bar was located on Highway 12 in Boyes Hot Springs, Sonoma County. Respondent Mario Mata was the proprietor of El Rio Bar from June 1995 through June 1999. Respondent Daniel Salata owned the premises and rented the property to Mario Mata. Salata never inspected the premises during the time he rented it to Mata. Although Salata had "heard of fights" at the bar on a couple of occasions during Mata's tenure, he never talked with the proprietor about security at the bar, asked him what he was doing to stop fights, or warned him that the lease would be cancelled if he heard about other fights.

El Rio Bar consisted of a one-story building with a small parking area abutting Highway 12. Respondent Mata maintained a floodlight on the roof of the bar. Immediately outside the bar was a sidewalk adjacent to the parking area. The sidewalk was approximately four feet wide; the parking area approximately 11 feet wide; and thus Highway 12 was approximately 15 feet from the doors of the bar. The El Rio Bar staff maintained the parking area for the patrons.

A taco wagon parked regularly in front of the bar and was located there the night of the shooting. Respondent Mata provided electricity to the wagon by means of an extension cord hooked into an outlet in the bar. Patrons mingled around the wagon, bought tacos and brought food into the bar from the wagon.

Respondent Mata had rules for running his bar. People working there—including himself—were not supposed to consume alcoholic beverages on the job. If there was an argument, a fight or a customer was "trying to cause some problems," El Rio Bar employees were instructed to dial 911. During his proprietorship, employees called 911 on more than three occasions. Finally, if a customer were "getting out of control," Mata instructed his

employees to stop selling the customer any alcoholic beverages, tell him or her to calm down and if a fight broke out, try to stop it, or tell them to "take it outside."

One patron had been "banned" from El Rio Bar. Francisco Heredia, who used to work as a security guard at El Rio Bar, on one occasion told Antonio Garcia never to come around again because he had been about to start a fight.

Respondent Mata usually employed a security guard on weekends to work the entrance to the bar. Security guards usually carried a billy club and a large flashlight. Their duties included monitoring the number of patrons so as not to exceed the maximum capacity, checking identification to keep out minors, looking for signs of intoxication, and checking for weapons. The security guards were to eject unruly, aggressive or intoxicated patrons and tell them never to return to El Rio Bar.

B. *June 20, 1999 Incident*

On the evening of June 20, 1999, respondent Mata opened the bar at 4:00 p.m. Between 6:00 p.m. and 11:00 p.m. he consumed three beers. Salvador Botello was working as a security guard stationed at the front door of El Rio Bar. When hired, Botello did not indicate he had any prior security guard experience.

Antonio Garcia entered the bar around 11:00 or 11:15 p.m. Botello was working the door at that time. Carlos Zaragoza-Magana was also present at El Rio Bar. He observed Garcia enter with another man, noting that Garcia looked and acted as if he had been drinking. Zaragoza-Magana heard Garcia say in Spanish that he wanted to "beat the shit" out of Alonzo Ortiz, who was also present.

Respondent Mata asked Garcia to leave. Garcia asked "[W]hy?" Mata explained he was not allowed to be there "because he had some problems there before." Garcia left with some other men. No one followed him out to make sure he left the parking lot premises. Zaragoza-Magana left the bar about the same time, observing Garcia and the other man drive away in a red Camaro.

Zaragoza-Magana hung out at the taco wagon and ate some tacos. Garcia returned. Zaragoza-Magana observed that he looked angry and when he got out of the Camaro, he said something in Spanish to the effect that "now these motherfuckers [are] going to pay."

Shortly before 11:55 p.m., Garcia reentered the bar with a plate of tacos. He asked to be served a beer but respondent Mata refused, telling him he was "supposed to be gone." Garcia was angry and said something to the effect, "[Y]ou're going to pay for this." He walked toward the front door, backward, trying to talk to Mata. Respondent Mata's brother Frumencio was standing by the door.[1] Frumencio opened the door for Garcia and just before Garcia left the premises he reached behind, under his shirt, for something. Frumencio shut the door. Someone inside the bar yelled, "He's got a gun." Respondent Mata told everyone to hit the ground.

As soon as the door shut, Zaragoza-Magana saw Garcia take out a gun and rapidly shoot at the door of El Rio Bar. Shots came through the door. Frumencio ran toward the bar, was shot and killed. Another brother, Salvador Mata, was seriously wounded; and appellant Francisco Rodriguez, a patron, was shot in the cheek.

Garcia took off. No one has been arrested in the case. Although respondent Mata did not see the shooter, when the mother of appellant Liccet Guzman Mata asked him if Garcia was the person who shot Frumencio Mata, he responded "Yes."

## C. *Litigation*

Rodriguez sued respondents Mario Mata, individually and doing business as El Rio Bar, and Daniel J. Salata for negligence (A099340). Liccet Guzman Mata, through her guardian ad litem Ruth Guzman, sued them for wrongful death (A099320). Respondents moved for summary judgment. Ultimately, the trial court granted summary judgment in favor of respondents in both actions. These consolidated appeals followed.

## II. DISCUSSION

### A. *Standard of Review*

■ Summary judgment in a defendant's favor is proper if (1) the defendant shows one or more elements of a cause of action cannot be established, or there is a complete defense to it; and (2) the plaintiff fails to meet the burden of showing the existence of a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (p)(2).) Because a summary judgment

---

[1]Botello had asked Frumencio to cover for him at the front door security post while he went to the restroom for a short break. Frumencio sometimes helped out at the bar. Respondent Mata had instructed Botello to let *him* know when Botello needed a break so he, Mata, could take over.

motion raises pure questions of law, we independently review the trial court's grant of summary judgments. (*Gray v. Stewart* (2002) 97 Cal.App.4th 1394, 1397 [119 Cal.Rptr.2d 217].)

### B. *Judgment in Favor of Respondent Mario Mata Must Be Reversed*

Relying on *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666 [25 Cal.Rptr.2d 137, 863 P.2d 207], the trial court concluded that "[t]he totality of the circumstances, established facts and evidence support a finding that the shooting was an unforeseeable event which defendants therefore had no duty to guard against."

Our Supreme Court has reiterated that the scope of a landlord's duty to provide protection from foreseeable third party criminal acts is determined in part by balancing the foreseeability of harm against the burden of the duty to be imposed. (*Ann M. v. Pacific Plaza Shopping Center, supra*, 6 Cal.4th at p. 678.) The court went on to hold that "a high degree of foreseeability is required in order to find that the scope of a landlord's duty of care includes the hiring of security guards. We further conclude that the requisite degree of foreseeability rarely, if ever, can be proven in the absence of prior similar incidents of violent crime on the landowner's premises." (*Id.* at p. 679, fn. omitted.)

With respect to the specific duty of a tavern keeper to protect patrons from injury by another, case law establishes that the duty arises in the following circumstances: The tavern keeper (1) permitted someone on the premises with a "known propensity" for fighting; (2) permitted a person to remain on the premises whose conduct had become so obstreperous and aggressive that the tavern keeper knew or ought to have known he or she endangered others; (3) had been warned of danger from an obstreperous patron and did not take suitable steps to protect others; (4) failed to halt a fight as soon as possible after it started; (5) did not provide adequate staff to police the premises; and (6) tolerated disorderly conditions. (*Saatzer v. Smith* (1981) 122 Cal.App.3d 512, 518 [176 Cal.Rptr. 68].)

Appellants correctly point out that *Ann M.* is inapposite as to respondent Mata's liability because Mata employed a security guard at El Rio Bar, and that guard was on duty the night of the shooting. The duty to protect had already been assumed and therefore the issue of foreseeability becomes irrelevant.

A security guard is in a special relationship with the customers of the business that hired the guard. This special relationship imposes on the guard

the obligation to act affirmatively to protect customers while on the premises. The security guard is liable to an injured customer when the guard fails to act reasonably and that failure causes injury. The business, in turn, may be liable for failing to hire a competent security guard. (*Trujillo v. G.A. Enterprises, Inc.* (1995) 36 Cal.App.4th 1105, 1108-1109 [43 Cal.Rptr.2d 36]; *Marois v. Royal Investigation & Patrol, Inc.* (1984) 162 Cal.App.3d 193, 199-200 [208 Cal.Rptr. 384].) Having assumed the duty to protect one's patrons while on the premises of a business establishment, the proprietor will be liable if the guard acts unreasonably. (*Lopez v. Baca* (2002) 98 Cal.App.4th 1008, 1018 [120 Cal.Rptr.2d 281].) Moreover, the proprietor will be *directly* liable when he or she negligently hires or retains an incompetent employee (*Underwriters Ins. Co. v. Purdie* (1983) 145 Cal.App.3d 57, 69 [193 Cal.Rptr. 248]) or negligently trains (see *De Vera v. Long Beach Pub. Transportation Co.* (1986) 180 Cal.App.3d 782, 794 [225 Cal.Rptr. 789]) or supervises (see *Far West Financial Corp. v. D & S Co.* (1988) 46 Cal.3d 796, 812 [251 Cal.Rptr. 202, 760 P.2d 399]) the employee. Under these circumstances, the injured patron need not prove the proprietor had notice of prior similar acts. (See *Trujillo v. G.A. Enterprises, Inc., supra,* 36 Cal.App.4th at p. 1106.)

■ Here, respondent Mata hired weekend security guards and thus assumed a duty to protect patrons of El Rio Bar. The issue on summary judgment thus was not foreseeability of the particular harm, but whether the guard acted reasonably under the circumstances; whether the employer was negligent in the hiring, retention, supervision or training of the guard; and whether the actions or inactions of the guard and/or employer contributed to appellants' injuries.

Triable issues of fact existed concerning these issues. The hired security guard was present on the premises the night of the shooting. Among other duties, the guard was charged with the responsibility for containing and removing customers who were unruly, intoxicated, aggressive or getting "out of control," and checking patrons for weapons as they entered the bar. Previously permanently banned from El Rio Bar because of aggressive behavior, Garcia entered the premises on two occasions on June 20, 1999, appeared drunk to one patron, was not checked for weapons, and although forced to leave the bar itself, was not escorted off the premises, i.e., out of the parking lot. Neither Botello nor anyone else followed procedures and contacted 911 despite Garcia's forbidden presence and aggressive behavior. Botello breached procedures by asking Frumencio Mata to watch the door while he went to the restroom, instead of telling respondent Mata he needed a break so respondent could take over. Botello was hired with no prior experience and respondent Mata did not provide him with any written

instructions, job description or training materials. It is for the jury to decide whether security was lax because Garcia was not checked for weapons and was not removed from the parking area; whether respondent Mata was negligent in hiring, training, or supervising security staff; whether substituting Frumencio at the front door was a breach of security; whether the police should have been called; and whether any of these factors contributed to the injuries suffered.

Respondent Mata first counters that appellants have waived the right to argue that lax security implicates a duty. This is not so. Appellants raised the issue of lax security in the pleadings. Both complaints stated that defendants "failed to provide adequate security . . . ." As well, the issue was set forth in opposition to the summary judgment motions. Finally, counsel argued the matter at the hearing on respondent's motion.

Next, respondents assert: "It is undisputed that an unknown third party injured Appellants. The act of this unknown person was not foreseeable." Again, this is not so. There was direct and circumstantial evidence regarding the gunman's identity. Zaragoza-Magana declared he observed Garcia fire the shots into the bar. Additionally, the clear inference from respondent Mata's own testimony is that Garcia is the one who did the deed.

Additionally, respondent Mata claims immunity from liability because the shooting occurred off the premises of El Rio Bar, citing *Hassoon v. Shamieh* (2001) 89 Cal.App.4th 1191, 1195-1197 [107 Cal.Rptr.2d 658]. We agree that a landowner or possessor generally has no duty to take measures to prevent foreseeable violence occurring off the premises. (*Ibid.*) However, appellants' facts support the inference that the shooting occurred just as Garcia, walking backward, exited the bar. At that point he would be on the sidewalk or in the parking lot. We do not know whether the parking lot was part of the leased premises. Nonetheless, the record reflects evidence and legitimate inferences therefrom that respondent Mata exercised sufficient control over the parking lot to permit imposition of a duty to customers injured from shots fired at that location. (See *Southland Corp. v. Superior Court* (1988) 203 Cal.App.3d 656, 666 [250 Cal.Rptr. 57].)

In *Southland*, a convenience store customer was attacked by unknown persons on a vacant, unpaved lot adjacent to the store, on his way to the car after making purchases. Upholding denial of summary judgment for the proprietors, the reviewing court held that although the defendants did not own or lease the lot, a jury could conclude on the record evidence that they exercised sufficient control over it based on the following: (1) the store's premises provided inadequate parking; (2) customers regularly used the

adjacent lot to park while shopping at the store; (3) the lease authorized the nonexclusive use of the adjacent lot for customer parking; (4) defendants were aware that customers regularly used the lot and took no action to limit such use; (5) it was reasonable to infer that petitioners realized a significant commercial benefit from customers' use of the lot; (6) the store and the lot had become a hangout for local juveniles who sometimes fought; and (7) store employees on a number of occasions had requested police assistance to remove juvenile loiterers from the store and the lot. (*Southland Corp. v. Superior Court, supra,* 203 Cal.App.3d at pp. 666-667.)

Here, the case is even stronger for concluding that respondent Mata's duty encompassed violence on the parking lot aimed at patrons in the bar. Customers of El Rio Bar used the parking lot to park their vehicles while patronizing the bar. Respondent Mata lit the outside of the bar with a floodlight which he maintained. Patrons frequently mingled in the lot around the taco wagon that was parked there, buying food there and bringing it into the bar. Respondent Mata provided electricity for the wagon, and staff of El Rio Bar maintained the parking lot. For purposes of this lawsuit, the premises included the parking lot.

Finally, respondent Mata urges that the reasoning of *Alvarez v. Jacmar Pacific Pizza Corp.* (2002) 100 Cal.App.4th 1190 [122 Cal.Rptr.2d 890] pertains to the issue of his duty. There, restaurant employees called police to the scene following a fistfight in the parking lot. The plaintiffs, family members of the murdered victim, charged that the employees failed to adequately apprise the police of the magnitude of the threat posed by the assailants who had left, but who had said they would return. The police determined the altercation was over and departed. The assailant returned, shot and killed the victim. Upholding nonsuit in favor of the defendants, the reviewing court held they had no duty to do anything beyond calling the police, since the subsequent violent assault was not foreseeable. (*Id.* at pp. 1210-1211.) Further, three violent prior incidents added nothing to the foreseeability equation given their dissimilarity to the incident in question. (*Id.* at p. 1211.) The defendants in *Alvarez* did not hire security personnel and thus the case has no bearing on the negligence issues involved in this case. Nor does the prior similar incidents analysis impact these concerns.

C. *Summary Judgment in Favor of Respondent Salata Was Proper*

Because a landlord has relinquished possessory interest in the land, his or her duty of care to third parties injured on the land is attenuated as compared with the tenant who enjoys possession and control. Thus, before liability may be thrust on a landlord for a third party's injury due to a

dangerous condition on the land, the plaintiff must show that the landlord had actual knowledge of the dangerous condition in question, plus the right and ability to cure the condition. (*Leakes v. Shamoun* (1986) 187 Cal.App.3d 772, 776 [232 Cal.Rptr. 171].) For example, a landlord with actual knowledge of the presence of a vicious dog kept by the tenant on the leased premises owes a duty of care to the tenant's guests to prevent injury from attack by the dog where the landlord has the right to take possession and remove the animal. (*Uccello v. Laudenslayer* (1975) 44 Cal.App.3d 504, 511-514 [118 Cal.Rptr. 741, 81 A.L.R.3d 628].) The landlord in *Uccello* had the ability to cure the dangerous condition. Since the term of the tenancy was month to month, terminable upon two weeks' notice, the landlord could have terminated or threatened to terminate the tenancy, thereby abating the dangerous condition.

Appellants urge that Salata is liable for their injuries because he allowed dangerous conditions to exist on the premises he owned. But appellants cannot meet either condition of liability.

First, as to actual knowledge of a dangerous condition on the property, at most Salata had "heard of" fights at the bar on a "couple" of occasions. Second, assuming, for purposes of argument only, that Salata had *actual* awareness of prior fights on the premises and such fights as such amounted to a dangerous condition, this condition had nothing to do with the land itself. Rather, it had to do with the manner in which the proprietor of El Rio Bar ran his business. Salata was a landlord, not a manager or supervisor of the bar.

More importantly, appellants have not set forth any provisions of the lease showing Salata's ability to cure the condition. What rights of entry did he have, on what conditions? What was the term of the lease? Had these fights occurred before or after any term of renewal? What conditions triggered the landlord's right to terminate? What were the notice provisions? Lacking any evidence on these specifics, no ability to cure the situation, and thus no causation, can be established.

Finally, the legal existence of a landlord's duty of care in any given case depends on a multifaceted analysis. As first enunciated in *Rowland v. Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], the following aspects bear on the existence of this duty: "[T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the

burden to the defendant and consequences to the community of imposing a duty . . . with resulting liability for breach, and the availability [and] cost . . . of insurance . . . ." ■ The connection between Salata's action or inaction with respect to the premises and the shooting was remote, at best. Salata's moral blame was tenuous, at best, especially as compared with respondent Mata, the proprietor of the bar and the employer of the security guards. It was the proprietor of El Rio Bar—not Salata, the owner of the property—who hired the security guards, had day-to-day knowledge of who had been banned from the premises, and set the rules for staff to follow in dealing with unruly patrons. Under these facts it makes no sense to us to conclude that Salata owed appellants a duty of care.

### III. Disposition

The summary judgment in favor of respondent Mata is reversed in A099320 and A099340. The summary judgment in respondent Salata's favor is affirmed in A099320 and A099340.

Kay, P. J., and Sepulveda, J., concurred.

On February 6, 2003, the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied April 23, 2003. Moreno, J., was of the opinion that the petition should be granted.