5 Cal.Rptr.3d 141 (2003)
112 Cal.App.4th 405
Guillermo AVILA et al., Plaintiffs and Appellants,
v.
JADO PROPERTIES, INC., Defendant and Respondent.
No. B153932.
Court of Appeal, Second District, Division Eight.
September 30, 2003.
Review Granted January 14, 2004.
*142 Law Offices of George B. Pacheco and George B. Pacheco, Montebello, for Plaintiff and Appellant Guillermo Avila.
Moreno, Becerra, Guerrero & Casillas and Danilo Becerra, Montebello, for Plaintiff and Appellant Jeremiah Del Real.
Horvitz & Levy, Peter Abrahams, Encino, and Orly Degani, San Francisco; Schaffer, Lax, McNaughton & Chen, Kevin J. McNaughton and Jill A. Franklin, Los Angeles, for Defendant and Respondent.
COOPER, P.J.
In this premises liability and negligence case, we hold that the trial court erred in granting summary judgment in favor of a landowner who owed the Appellants a contractual duty to provide security in a nonnegligent manner. The record reveals triable issues of material fact regarding (1) the scope of the landowner's contractual duty; (2) whether the landowner breached its contractual duty; and (3) whether there is a substantial link between the alleged breaches and the injuries Appellants suffered *143 when they were shot in front of the landowner's property.
The award of summary judgment included an adjudication of Appellants' cause of action for fraud. Because Appellants' abandon this cause of action on appeal, we direct the trial court to enter an order awarding summary adjudication of that cause of action.

FACTUAL BACKGROUND
Jado Properties Inc. does business as Steven's Steak and Seafood House (Steven's). Steven's is a restaurant located in the City of Commerce. The main entrance to the restaurant is on Steven's Place. In addition to the main entrance, two doors open directly from banquet rooms in Steven's onto Eastern Avenue. "[0]n occasion some of the patrons [of Steven's] will come out [of the restaurant] and catch a smoke or sit ... and ... chat ... on the sidewalk." The owner of Steven's, Virginia Filipan, was aware that people would smoke outside the building on the Eastern Avenue side. Steven's also provided a patio where patrons could go to smoke.
Leticia and Alfredo Macias and Connie and Rafael Macias decided to host a "double quinceanera" to celebrate their daughters' fifteenth birthdays. The Macias hosted the event in a banquet room at Steven's. When planning the event, Leticia was told "security would be provided for their event by Steven's." Leticia did not ask any specific questions regarding the kind of security that would be provided. Alfredo Macias was told "don't worry, we have experience, we have so many parties right here so, you know, everything is going to take care [sic ]." Alfredo Macias understood that statement to mean that he did not have to bring his "own policeman to the event." Donald Caruthers, a Steven's employee, explained that when an event is booked at Steven's, if an inquiry is made regarding security, he "would just say we have in-house security and we never had any problems here."
The Macias event took place April 17, 1999. Like other nights, Robert Hibbing, a former deputy sheriff, patrolled the outside of Steven's in a golf cart. Hibbing's general routine included driving his golf cart in an alley so that he could see the sidewalk in front of the banquet room where the Macias' event was held. Hibbing, however, did not recall whether he actually followed this routine on April 17, 1999. Hibbing testified that Steven's had a security team but the record does not reveal the members of this team. Hibbing was aware that patrons would sometimes exit from the banquet rooms onto Eastern Avenue and chat outside.
Guillermo Avila and Jeremiah Del Real (Appellants) attended the Macias' event. Just before midnight, several people (estimated as between 20 and 40), including Avila, congregated on the sidewalk outside the banquet room. While he was standing on the sidewalk, Avila noticed a vehicle drive up, and later learned that the driver and four passengers were members of the Stoner 13 gang.
Someone inside the vehicle yelled at girls who were also standing on the sidewalk outside the banquet room. One of the people inside the vehicle asked Avila where he was from, a greeting Avila understood to be gang related. In an effort to show that he was not part of any gang, Avila responded that he was from no where. The vehicle then made a u-turn, and stopped in front of Steven's.
Then people "jumped out" of the car. Avila offered the following varying descriptions of what happened next: (1) The gang members hit Avila's cousin and Avila went "into the middle of the street" because *144 "that is [his] family"; (2) Avila was dragged from the sidewalk to the street by the gang members; and (3) "Avila had attempted to prevent the gang members from harassing the young teenage women who were at the entrance to the banquet area of Steven's Steakhouse." The person fighting with Avila pulled out a gun and shot Avila.
In his deposition, Del Real stated that he stepped outside, and within 30 seconds, shots were fired. Del Real also explained, "I went outside. There was a scuffle and someone pulled me in the street and shot me." Del Real further stated "as soon as I stepped out, there was someone running at me already."
There were several different estimates of the time that elapsed from when the vehicle first appeared in front of Steven's to when the shootings took place. The longest estimate (which we use because of the procedural posture of this case) was found in Avila's declaration, which indicated that the gang members spoke to the girls for 5-10 minutes, then spent 5-10 minutes yelling at Avila and making a u-turn, then spent 2-3 minutes getting out of their vehicle and arguing with another person.
At some point after the gang members arrived and before the shootings, an unknown person informed Hibbing, who was on the other side of the restaurant, that people were fighting outside the restaurant. Hibbing "radioed it in," but it is not clear who, if anyone, received this dispatch. Hibbing went inside the restaurant to get assistance from deputy sheriff Oscar Barragan, an on-duty sheriff who happened to be inside Steven's. After Hibbing told Barragan of the fight, Barragan ran outside with Hibbing. Barragan saw two sets of one-on-one fistfights on Eastern Avenue. "Barragan then moved into the situation slowly in order to make his presence known and safely assess the situation." Barragan was not able to assess the situation prior to the shootings and according to him, assessing the situation was a prerequisite for calling for assistance. After the gun shots were fired, Barragan took cover and called for backup.
Deputy Sheriff Scott Schulze received Barragan's request for assistance, located the vehicle based on Barragan's description, and followed the vehicle. When Schulze turned on his lights, the driver increased the speed of the vehicle. Eventually the vehicle crashed into an apartment building.
One Appellant ended up in the middle of the street, near a center divider and the other was three or four feet from the curb. As a result of the shootings, Del Real was required to have his leg amputated and Avila suffered nerve damage to his leg.

PROCEDURAL BACKGROUND
Appellants filed separate complaints, each alleging causes of action for premises liability and negligence, both based on allegations of lack of security or lack of adequate security. Appellants also each alleged a cause of action for fraud. Steven's, Rafael Macias, Connie Macias, Jose Macias, and Leticia Macias were named as defendants. The Macias cross-complained against Steven's seeking indemnity.[1]
Steven's moved for summary judgment or in the alternative for summary adjudication, arguing (1) that Steven's had no *145 duty "applicable" to Appellants and that (2) Appellants could not demonstrate causation as a matter of law.
In opposition to summary judgment, Appellants argued triable issues of material fact remained, including the following: (1) "Defendant Steven's had specifically promised that it would provide security for the event and whether or not it failed to do so"; (2) "Defendants Steven's Steakhouse assumed the duty to patrol and monitor the area immediately adjacent the entrance and exit of the banquet facilities where the incident occurred"; and (3) "[t]he security personnel that was provided by Steven's Steakhouse was unprepared for the quinceanera that was held on April 17, 1999 and their incompetence prevented them from making a timely intervention. ..."
Appellants presented the declaration of Don MacNeil, a former police officer, security consultant, and university instructor. MacNeil opined that, based on his location, it appeared that Hibbing's primary responsibility was to secure the cars, not to provide security for the Macias's event. Mac-Neil also opined that the security should have been highly visible to serve as a deterrent and that Steven's should have created "an emergency plan that insured that when an emergency situation unfolded that there was a coordinated effort to secure the safety of the patrons." MacNeil further opined that it was necessary to constantly monitor "any outside area of congregation of people...." According to MacNeil, "[i]f Mr. Hibbing were a competent security officer, he would have been properly prepared for the evening ... [would] provide for regular monitoring of the young people that were certain to congregate outside and would have been immediately able to de-escalate a situation that ultimately took at least 13 minute to unfold and thirteen minute episode that lead to the tragic shooting of Jeremiah Del Real and Guillermo Avila."
Specifically, MacNeil stated that competent security could have prevented the shooting by intervening when the "harassment of the young female party attendees" first started, and could have alerted others including requesting assistance from a local police station. MacNeil also opined that a security guard could have "alerted the parents inside the banquet room of the need to immediately bring their children back inside the banquet room" and ushered the people back inside. MacNeil concluded that "it is more probable than not, that competent security personnel would have prevented the attack upon Steven's patrons [Avila and Del Real] at the Macias Quinceanera from occurring and even if an incident had occurred, competent security would have intervened before any injuries occurred to Mr. Del Real and Mr. Avila."
The trial court granted summary judgment. The court found Steven's had no duty because the actions taken by third parties occurred on the public sidewalk and public street. The court further found that the shootings were not foreseeable. In addition, the court found no evidence of causation. Finally, the court concluded MacNeil's declaration was based on speculation. Appellants timely appealed.

DISCUSSION
A defendant meets his or her burden upon a motion for summary judgment or summary adjudication if that party has proved "one or more elements of the cause of action cannot be established....." (Code Civ. Proa, § 437c, subd. (o)(1).) The defendant need not conclusively negate an element of the plaintiffs cause of action. (Aguilar v. Atlantic Richfield Co. (2001) 25 Cal.4th 826, 853, 107 Cal.Rptr .2d 841, 24 P.3d 493.) To shift the burden to the nonmoving party, the evidence produced *146 by the moving party must "persuade the court that there is no material fact for a reasonable trier of fact to find...." (Id. at p. 850, fn. 11, 107 Cal.Rptr.2d 841, 24 P.3d 493.) The moving party also bears a burden of production "to make a prima facie showing of the nonexistence of any genuine triable issue of material fact." (Id. at p. 845, 107 Cal.Rptr.2d 841, 24 P.3d 493.) "A prima facie showing is one that is sufficient to support the position of the party in question." (Id. at p. 851, 107 Cal.Rptr.2d 841, 24 P.3d 493.)
"Once the defendant or cross-defendant has met that burden, the burden shifts to the plaintiff ... to show that a triable issue of one or more material facts exists. ..." (Code Civ. Proa, § 437c, subd. (p)(2).) In opposing the motion, the plaintiff may not simply rely upon allegations or denials of the pleadings; the plaintiff must set forth specific facts showing that a triable issue of material fact exists. (Ibid.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (Aguilar v. Atlantic Richfield Co., supra, 25 Cal.4th at p. 850, 107 Cal.Rptr.2d 841, 24 P.3d 493.)
To prevail in their causes of action for negligence and premises liability, Appellants must show that Steven's owed them a duty, that Steven's breached the duty, and that the breach of duty was a proximate cause of their injuries. (Saelzler v. Advanced Group 400 (2001) 25 Cal.4th 763, 772, 107 Cal.Rptr.2d 617, 23 P.3d 1143 (Saelzler); Ann M. v. Pacific Plaza Shopping Center (1993) 6 Cal.4th 666, 673, 25 Cal.Rptr .2d 137, 863 P.2d 207 (Ann M.).) In their motion for summary judgment and on appeal, Steven's argues that Appellants cannot establish either duty or causation.

I. Duty
Steven's maintains that the entry of summary judgment was correct because it owed Appellants no duty. Steven's acknowledges that a business owner is required to maintain its premises in a "reasonably safe condition," but, quoting Ann M., supra, 6 Cal.4th at p. 674, 25 Cal. Rptr.2d 137, 863 P.2d 207, argues the business owner is required only to take "`reasonable steps'" to prevent "`foreseeable criminal acts of third parties that are likely to occur in the absence of such precautionary measures.'"
In Ann M., the court considered "whether the scope of the duty owed by the owner of a shopping center to maintain common areas within its possession and control in a reasonably safe condition includes providing security guards in those areas." (Ann M., supra, 6 Cal.4th at p. 670, 25 Cal.Rptr.2d 137, 863 P.2d 207.) The duty discussed in Ann M. was a landowner's "general duty of maintenance." The court held that the general duty of maintenance did not require the shopping center owner to provide security in the common areas. (Id. at pp. 679-680, 25 Cal.Rptr .2d 137, 863 P.2d 207.)
As Ann M. explains, the general duty of maintenance requires a landlord to ensure that property in "their possession and control [is] in a reasonably safe condition." (Ann M., supra, 6 Cal.4th at p. 674, 25 Cal.Rptr.2d 137, 863 P.2d 207.) Ensuring that property is in a reasonably safe condition requires taking "affirmative action to control the wrongful acts of a third party" only if "such conduct can be reasonably anticipated." (Id. at p. 676, 25 Cal.Rptr.2d 137, 863 P.2d 207.) "[A] high degree of foreseeability is required in order to find that the scope of a landlord's duty of care includes the hiring of security guards" because hiring security guards imposes a *147 significant burden on the landowner. (Id. at p. 679, 25 Cal.Rptr.2d 137, 863 P.2d 207.) "[T]he requisite degree of foreseeability rarely, if ever, can be proven in the absence of prior similar incidents of violent crime on the landowner's premises." (Ibid.)
Ann M. is inapposite; it involved only a landowner's "general duty of maintenance." In contrast, this case arises out of a contractual duty to provide security. Steven's admitted that "Leticia Macias and her husband Jose Alfredo Macias were assured that security would be provided for their event by Steven's." Thus, the key issue in this case is the scope of Steven's contractual duty, not the scope of its general duty of maintenance, and Ann M. provides no guidance.
The rule that applies to this case is as follows: "`"[accompanying every contract is a common-law duty to perform with care, skill, reasonable expedience, and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort, as well as a breach of the contract." The rule which imposes this duty is of universal application as to all persons who by contract undertake professional or other business engagements requiring the exercise of care, skill and knowledge; the obligation is implied by law and need not be stated in the agreement [citation].'" (North American Chemical Co. v. Superior Court (1997) 59 Cal.App.4th 764, 774, 69 Cal.Rptr.2d 466, quoting Roscoe Moss Co. v. Jenkins (1942) 55 Cal.App.2d 369, 376, 130 P.2d 477.)
Steven's agreed to provide security for the Macias's event, which Appellants attended. Whether Steven's performed its duty with the required care is a question of material fact and depends on the level of security required under the agreement between Steven's and the Macias. "When the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court." (Restatement of Contracts § 204; see also Denver D. Darling, Inc. v. Controlled Environments Construction, Inc. (2001) 89 Cal.App.4th 1221, 1236, 108 Cal. Rptr.2d 213.) Questions regarding the level of security promised are not ripe for our review because they were not raised in the summary judgment motion.

A.
Rather than focusing on the contract, the parties dispute the application of the rule that landowners are not required to maintain property outside of their ownership, possession, and control. (See e.g. Donnell v. California Western School of Law (1988) 200 Cal.App.3d 715, 720, 246 Cal.Rptr. 199 (Donnell); Balard v. Bassman Event Security, Inc. (1989) 210 Cal. App.3d 243, 247, 258 Cal.Rptr. 343.) This rule relates to a landowner's "general duty of maintenance" not to a contractual duty to provide security. However, for purposes of argument, we assume that Steven's contractual duty is coextensive with this general duty of maintenance and consider Steven's argument that "[b]ecause, here, the attack on plaintiffs occurred on a public street and sidewalk, Steven's owed no duty to plaintiffs to prevent the attack as a matter of law."
Steven's contention would have merit either if a landowner, as a matter of law, never controls a public sidewalk or if Steven's could show that, as a matter of law, it did not control the public sidewalk in front of its restaurant. We consider these issues separately. We also discuss the undisputed fact that the shootings occurred *148 on a public street, a fact Steven's emphasizes.

i. Control of Public Property
Alcaraz v. Vece (1997) 14 Cal.4th 1149, 1161, 60 Cal.Rptr.2d 448, 929 P.2d 1239 (Vece) instructs that a private landowner may control property owned by a city.[2] The plaintiff, a tenant, was injured when he stepped into a utility meter box located in the lawn in front of his apartment building. (Id. at p. 1153, 60 Cal.Rptr.2d 448, 929 P.2d 1239.) The court held that the fact the defendant did not own the land containing the alleged dangerous condition did not support the award of summary judgment in favor of the defendant. (Id. at p. 1157, 60 Cal.Rptr.2d 448, 929 P.2d 1239.) In reaching this conclusion, the court relied, inter alia, on the following passage in Schwartz v. Helms Bakery Limited (1967) 67 Cal.2d 232, 239, 60 Cal. Rptr. 510, 430 P.2d 68, which is particularly relevant here: "The courts have long held that one who invites another to do business with him owes to the invitee the duty to exercise reasonable care to prevent his being injured on `the premises.' The physical area encompassed by the term `the premises' does not, however, coincide with the area to which the invitor possess a title or a lease. The `premises' may be less or greater than the invitor's property. The premises may include such means of ingress an egress as a customer may reasonably be expected to use." (Ibid.)
Similar principles were applied by the Fifth Circuit in a case analogous to the present one, Banks v. Hyatt Corp. (5th cir.1984) 722 F.2d 214. Banks involved the shooting of a hotel guest by a third party outside the entrance to the hotel on property serving as a sidewalk. The hotel argued that it could not be liable for conduct that occurred on a sidewalk. (Id. at p. 221.) The court concluded that "[a]fter examining general tort doctrine, the relevant caselaw, and the policies underlying tort liability, we find ourselves unwilling to create an immunity based on a distance of four feet," the distance between the victim's feet and the hotel entrance. (Id. at p. 221.) The Banks court relied on a rule very similar to that relied on by our high court in Vece: the area of invitation "`extends to the entrance of the property and to a safe exit after the purpose [of the visit] is concluded; and it extends to all parts of the premises to which the purpose may reasonably be expected to take him.'" (Id. at p. 222, quoting Prosser, Law of Torts (4th ed.1975) § 61 at p. 392.)
These cases show that Steven's argument that "[t]he case law is clear that, as a matter of law, business owners are not responsible for crimes occurring on public streets and sidewalks abutting their property" goes too far. A business owner who exercises control over public property may be liable for its failure to maintain that property. "As long as the defendant exercised control over the land, the location of the property line would not affect the defendant's potential liability." (Vece, supra, 14 Cal.4th at p. 1161, 60 Cal. Rptr .2d 448, 929 P.2d 1239; see also Mata *149 v. Mata (2003) 105 Cal.App.4th 1121, 1130, 130 Cal.Rptr .2d 141 [regardless of whether parking lot was part of leased premises, owner of a bar "exercised sufficient control over the parking lot to permit imposition of a duty to customers injured from shots fired at that location."].)

ii. Control of the Sidewalk Adjacent to Steven's
The remaining question is whether Steven's has shown that, as a matter of law, it did not control the sidewalk on Eastern Avenue adjacent to the restaurant. Steven's relies on several cases, the most relevant of which is Donnell v. California Western School of Law, supra, 200 Cal. App.3d 715, 246 Cal.Rptr. 199. In Donnell, a student left the school's library at 10:00 p.m. and walked to his car. While walking "along the west side of Cal Western's building," the student was attacked. (Id. at pp. 717-718, 246 Cal.Rptr. 199.) The court affirmed the award of summary judgment in favor of the defendant school in a premises liability cause of action because the school did not own, possess, or control the property where the attack took place. (Id. at p. 720, 246 Cal.Rptr. 199.) "The law of premises liability does not extend so far as to hold Cal Western liable merely because its property exists next to adjoining dangerous property and it took no action to influence or affect the condition of such adjoining property." (Ibid.[3]
The Donnell court used the latter principle to distinguish Johnston v. De La Guerra Properties, Inc. (1946) 28 Cal.2d 394, 170 P.2d 5 (Johnston). In Johnston, the court held that evidence a tenant who placed a light outside the wall of a restaurant to illuminate a private walkway would support the finding that the tenant exercised control over a portion of the walkway and "of the means of illuminating the entrance way...." (Id. at p. 401, 170 P.2d 5.) Therefore, the tenant could be liable for injuries sustained by a patron. (Ibid.) The Johnston court also held that the owner of the property leased to the restaurant could be liable because the duty is "sufficiently extensive to protect the business visitor in his use of such means of ingress and egress as by allurement or inducement, express or implied, he has been led to employ." (Id, at p. 399, 170 P.2d 5.) The duty of reasonable care applies "to that portion of the premises to which the invitee under the circumstances of the invitation would be likely to go."[4] (Ibid.)
This case is more like Johnston than Donnell. Most significantly, unlike Donnell, there was evidence that Steven's assumed responsibility for some security on Eastern Avenue because Hibbing included a view of Eastern Avenue in his general routine (even though Hibbing did not recall if he actually followed this routine on the night in question). In addition, the door to the banquet room at Steven's opened directly onto the sidewalk and Filipan and Hibbing acknowledged that Steven's patrons used the sidewalk outside the banquet room to chat or smoke, evidence that would support a finding that the area of invitation may have extended beyond the legal title of Steven's property *150 to include the sidewalk in front of the banquet room.[5] (Vece, supra, 14 Cal.4th at p. 1153, 60 Cal.Rptr.2d 448, 929 P.2d 1239.) The issue of whether Steven's controlled the sidewalk immediately in front of the banquet rooms where it was aware patrons sometimes congregated is a question of fact.

iii. The Location of the Shootings Is Not Dispositive
The undisputed fact that the shootings occurred in the street is not dispositive. In Frances T. v. Village Green Owners Assn. (1986) 42 Cal.3d 490, 501-503, 229 Cal.Rptr. 456, 723 P.2d 573, the court held that a condominium association and its directors could be liable for the failure to take reasonable precautions to light the common areas under their control even though the actual injuries to the plaintiff occurred in the plaintiffs apartment. By a parity of reasoning, Steven's could be liable for the failure to secure the sidewalk in front of the banquet room even though the actual shootings occurred in the street.
Thus, if we assume that Steven's contractual duty in this case is no greater than its general duty of maintenance, Steven's still has not shown that it is entitled to judgment as a matter of law because the conduct at issue occurred on a public sidewalk and public street.

B.
Steven's correctly points out that, under general negligence principles, a landowner has a duty to take steps to secure the premises only against "foreseeable criminal acts of third parties that are likely to occur...." (Ann M., supra, 6 Cal.4th at p. 674, 25 Cal.Rptr.2d 137, 863 P.2d 207, emphasis added.) A "high degree of foreseeability" is necessary in cases involving a landlord's alleged duty to provide security because the burden of hiring security is significant. (Id. at p. 679, 25 Cal.Rptr.2d 137, 863 P.2d 207.) "To hold otherwise would impose an unfair burden upon landlords and, in effect, would force landlords to become the insurers of public safety, contrary to well-established policy of this state." (Ibid.)
These principles, which Steven's emphasizes, are inapplicable here. Steven's duty to provide security arises out of Steven's contract with the Macias, based on which Alfredo Macias stated that he understood Steven's promise to mean that he did not have to bring his own police. In contrast to the general duty of maintenance, a contractual duty is based on the promises made by the parties. The critical issue is whether Steven's nonnegligently performed its promiseto provide security for the Macias's eventnot whether the criminal conduct was foreseeable.
The parties dispute whether the element of foreseeability becomes irrelevant when a landowner provides security. (See Mata v. Mata, supra, 105 Cal.App.4th 1121, 130 Cal.Rptr.2d 141; Lopez v. Baca (2002) 98 Cal.App.4th 1008, 1017-1018, 120 Cal. Rptr.2d 281; and Trujillo v. G.A. Enterprises, Inc. (1995) 36 Cal.App.4th 1105, 1108-1109, 43 Cal.Rptr.2d 36.)[6] We need not resolve this dispute because here Steven's duty arises out of a contract and the promise to provide security exists whether or not the criminal conduct was foreseeable. Even if the Macias had been overly cautious in requesting security, once Steven's *151 promised to provide security for the Macias event, it assumed a duty to protect the patrons who attended the Macias event. (Cf. Weissich v. County of Marin (1990) 224 Cal.App.3d 1069, 1077, 274 Cal. Rptr. 342 ["Liability may be imposed on a person who has no general duty to act, but who has voluntarily assumed a protective duty toward an individual and undertakes action on his or her behalf, thereby inducing reliance."].)

II. Causation
To establish negligence or premises liability, Appellants must show causation, i.e. "some substantial link or nexus between omission and injury." (Saelzler, supra, 25 Cal.4th at p. 778, 107 Cal.Rptr.2d 617, 23 P.3d 1143.) For purposes of discussing causation, we assume Steven's breached a duty it owed to Appellants. (Steven's did not seek summary judgment on the element of breach.)
In Saelzler, our high court explained a plaintiffs burden in establishing causation. Saelzler involved the assault of a Federal Express employee, Marianne Saelzler, by three men who attempted to rape her when she tried to deliver a package to a 28 building 300 unit apartment complex. {Saelzler, supra, 25 Cal.4th at p. 768, 107 Cal.Rptr.2d 617, 23 P.3d 1143.) One security gate to the complex had been propped open, and Saelzler argued that this lapse in security, the failure to provide adequate security, and the failure to warn caused her injuries. (Id. at p. 769, 107 Cal. Rptr.2d 617, 23 P.3d 1143.) Saelzler also argued that her injuries could have been avoided if defendants had hired roving security guards to patrol the entire premises during the day. (Id. at p. 776-777, 107 Cal.Rptr.2d 617, 23 P.3d 1143.)
In an effort to avoid summary judgment, Saelzler presented an expert's opinion that "`this attack, assault and battery, and attempted rape on the plaintiff would not have occurred had there been daytime security and a more concerted effort to keep the gates repaired and closed.... It is my opinion that the premises were a haven for gangsters and hoodlums which further encouraged criminal activity as evidence [sic ] by the long history of criminal activity in the only one year prior to this incident.' " (Saelzler, supra, 25 Cal.4th at p. 771, 107 Cal.Rptr.2d 617, 23 P.3d 1143.)
The court found Saelzler's expert's declaration to be insufficient to show causation because Saelzler could not show (1) "that the defendants' failure to provide increased daytime security at each entrance gate or functioning locked gates was a substantial factor in causing her injuries" and (2) "that roving guards would have encountered her assailants or prevented the attack." (Id. at pp. 776-777, 107 Cal.Rptr.2d 617, 23 P.3d 1143.) The court further explained that the assailants could have been tenants of the apartment complex who could have entered even if the gate had been functioning and additional security had been provided. (Id. at p. 776, 107 Cal.Rptr.2d 617, 23 P.3d 1143.) The court indicated that causation may be shown if the "assailant took advantage of the defendant's lapse (such as a failure to keep a security gate in repair)," but found Saelzler's expert's testimony to be insufficient to establish this link. (Id. at p. 799, 107 Cal.Rptr.2d 617, 23 P.3d 1143.)
Steven's argues that just as in Saelzler, MacNeil's declaration is insufficient to show causation. We do not agree. In Saelzler, the element of causation was lacking because the plaintiff could not show a connection between her injury and the breaches she alleged. A locked gate would not have prevented tenants from entering the premises and the plaintiff did not know whether the assailants were tenants. Roving guards would have had to *152 patrol a 28 building complex, and Saelzler could not show that such patrols would have prevented the assault. Here the connection between the alleged breaches and the injury is much stronger, and is sufficient to raise a triable issue of material fact.
According to Appellants' expert, Steven's most fundamental breach was its failure to provide security for the Macias's event instead providing only "personnel set up to ensure that automobiles would not be stolen." Hibbing's testimony contains further evidence of this alleged breachhe did not recollect whether he viewed Eastern Avenue on April 17th and was not aware of the presence of the gang members until an unidentified person informed him. Steven's acknowledges that "Hibbing had no knowledge of potential criminals loitering in the street outside the restaurant on the night of the Quinceanera."
A jury could conclude the alleged failure to provide security for the Macias's event (as opposed to the main entrance of the restaurant and parking lot) delayed the discovery of the gang members and the fights to a point where it was no longer possible to deter the gang members or deescalate the situation. By the time Hibbing and Barragan arrived at the scene, Barragan was unable to assess the situation and call for backup before the shots were fired. MacNeil opined that a security guard who was aware of the events as they unfolded (1) could have intervened when the gang members began speaking to the girls outside the restaurant; (2) could have immediately requested back up from the sheriffs; and (3) could have urged the patrons to return inside.
The connection between the alleged breach and the harm is much stronger than the connection in Saelzler because Steven's promised to provide security for the "event," a much smaller and more concentrated undertaking than providing roving patrols for a 28 building 300 unit complex. The general purpose of security is for protection. (Marois v. Royal Investigation & Patrol, Inc. (1984) 162 Cal. App.3d 193, 200, 208 Cal.Rptr. 384 ["the guard [has] the obligation to act affirmatively to protect such customers while they are on the business premises."].) Here, Appellants have provided evidence of a direct link between the lack of protection or lack of adequate protection for the event and the shootings, which occurred in front of the room where the event took place and where Steven's knew patrons congregated.
"[W]here security guards fail to deter criminal activity, the issue of causation is to be resolved by the trier of fact." (Rosh v. Cave Imaging Systems, Inc. (1994) 26 Cal.App.4th 1225, 1236, fn. 3, 32 Cal. Rptr.2d 136.) It is up to the jury to decide whether it is reasonably probable that adequate security for the event could have prevented the shootings either by serving as a deterrent or by intervening prior to the shootings. (Madhani v. Cooper (2003) 106 Cal.App.4th 412, 418, 130 Cal.Rptr.2d 778 [finding causation in premises liability cause of action to be a jury question].)
This case differs from Nola M. v. University of Southern California (1993) 16 Cal.App.4th 421, 20 Cal.Rptr.2d 97, where the court found a university was not liable, as a matter of law, for the assault and attempted rape of the plaintiff. The court explained that "where, as here, we are presented with an open area which could be fully protected, if at all, only by a Berlin Wall, we do not believe a landowner is the cause of a physical assault it could not reasonably have prevented, [f ] Otherwise, where do we draw the line? How many guards are enough? Ten? Twenty? Two *153 hundred?" (Id. at p. 437, 20 Cal.Rptr.2d 97.)
Here, there is no claim that the area at issuethe Macias's eventwould require anything akin to the Berlin Wall to protect. The presence of security, even an unarmed security guard, in this immediate location had the potential to deter criminal conduct because of concern for "identification and capture." (Lopez v. McDonald's Corp. (1987) 193 Cal.App.3d 495, 517, 238 Cal.Rptr. 436.) According to Hibbing, "in terms of patrolling, the hope is that when you have high-visibility law enforcement folks, you can eliminate a certain amount of street crime[.]"
This case does not involve only "abstract negligence" where security is alleged to be inadequate but no "causal connection between that negligence and the injury" is proven. (See Noble v. Los Angeles Dodgers, Inc. (1985) 168 Cal.App.3d 912, 918-919, 214 Cal.Rptr. 395.) Evidence that the gang members were able to take "advantage of the defendant's lapse" (Saelzler, supra, 25 Cal.4th at p. 779, 107 Cal. Rptr.2d 617, 23 P.3d 1143)distinguishes this case from those involving only "abstract negligence." A jury could find that failing to secure or to adequately secure the Macias's eventthe gang members were able to take advantage of the elapse of time between the initial conversation with the girls outside the restaurant and the shootings by making a u-turn, exiting the vehicles, dragging Steven's patrons into the street, and fighting with the patrons.[7]

III. Waiver/Abandonment
In reaching the conclusion that the trial court erred in granting summary judgment, we have relied on portions of MacNeil's declaration even though the trial court found that the declaration was "without basis, and that the opinions offered by Mr. MacNeil lacked foundation and consisted of mere conjecture and speculation." The conclusions upon which we have relied are supported by MacNeil's experience in the security industry and by other evidence in the record. Contrary to the trial court's statement, those portions upon which we have relied, are not mere speculation. The legitimacy of MacNeil's assumptions (which view the facts in the light most favorable to Appellants), and the weight his testimony regarding the adequacy of the security Steven's provided are jury questions.
Our analysis required review of the record to determine whether Steven's has shown that Appellants have "not established, and cannot reasonably expect to establish, a prima facie case of causation ...." (Saelzler, supra, 25 Cal.4th at p. 768, 107 Cal.Rptr.2d 617, 23 P.3d 1143.) At this procedural stage, our review is "de novo" and we must consider the evidence in the light most favorable to the Appellants. (Id. at p. 768, 107 Cal.Rptr.2d 617, 23 P.3d 1143.) As Justice Johnson explained in his dissent in Lopez v. Baca, supra, 98 Cal.App.4th 1008, 1020, 120 Cal. Rptr.2d 281, "we have an affirmative duty to consider all the evidence the parties tendered unless we find the evidence the trial court excluded was properly excluded under operative principles of the law of evidence."
We decline to follow the majority in Lopez v. Baca, supra, 98 Cal.App.4th at pp. 1014-1015, 120 Cal.Rptr.2d 281, to the extent it would require us to have assumed the correctness of the trial court's evidentiary *154 rulings because Appellants do not separately challenge the trial court's evidentiary findings. Although Appellants do not separately label their argument, they provide enough discussion of MacNeil's declaration to preserve the issue for appeal. Requiring a separate heading entitled "the trial court erred in finding Mac-Neil's declaration to be speculative" would exalt form over substance. Because we are required to review de novo the grant of summary judgment, we include the evidence presented in MacNeil's declaration within our review.
In contrast, Appellants do not contend that the trial court erred in granting summary adjudication on their cause of action for fraud. Appellants neither mention, let alone provide any argument regarding why Steven's is not entitled to summary adjudication of that cause of action. By failing to raise the issue in any way in their appellate briefs, Appellants have abandoned it. (Reyes v. Kosha (1998) 65 Cal.App.4th 451, 466, fn. 6, 76 Cal. Rptr.2d 457 [holding our review is "limited to issues which have been adequately raised and supported in plaintiffs' brief."].)

DISPOSITION
The judgment is affirmed in part and reversed in part. The grant of summary adjudication in favor of Steven's on Appellants' cause of action for fraud is affirmed. The grant of summary adjudication on Appellants' causes of action for negligence and premises liability is reversed. The trial court is directed to enter an order granting summary adjudication of Appellants' cause of action for fraud. Each party to bear his or its own costs.
We concur: RUBIN and BOLAND, JJ.
NOTES
[1] Although Appellants filed separate complaints, they raised the same causes of action in their complaints, the same issues in their opposition to summary judgment, and in this appeal. Therefore, we need not consider their cases separately.
[2] In a footnote the Vece court indicated that a possessor of land "may owe a duty to persons using its property to warn them of, or protect them from, hazards on adjacent property that is not owned, possessed, or controlled by the defendant." (14 Cal.4th 1149, 1170, fn. 6, 60 Cal.Rptr.2d 448, 929 P.2d 1239.) The Vece court cited Stedman v. Spiros (1959) 23 Ill. App.2d 69, 161 N.E.2d 590, 597, as follows: "In holding that a hotel operator was not liable for injuries sustained by a guest who fell over a precipice in a state park approximately 50 feet from the hotel property, the court observed: `Clearly, if the brink of the precipice were a step or two from the defendant's door . .. we would have a different case than is now presented to us.'" The Vece court, however, did not decide this issue.
[3] Justice Weiner in dissent found no "meaningful difference between `influence' and `affect' and the concept control." (Donnell, supra, 200 Cal.App.3d at p. 727, 246 Cal.Rptr. 199.)
[4] This passage was cited approvingly in Alcaraz v. Vece, supra, 14 Cal.4th at p. 1158, 60 Cal.Rptr.2d 448, 929 P.2d 1239. However, as the Vece court noted, "[o]f course, the liability of a possessor of land no longer depends upon the `rigid common law classifications' of trespasser, licensee, and invitee." (Id. at p. 1158, fn. 2, 60 Cal.Rptr.2d 448, 929 P.2d 1239, quoting Rowland v. Christian (1968) 69 Cal.2d 108, 118, 70 Cal.Rptr. 97, 443 P.2d 561.)
[5] Steven's vigorously disputes Appellants' characterization of this space as a lounge. However, for purposes of this motion we view the facts in the light most favorable to Appellants.
[6] The Supreme Court recently granted review in Trax v. Delgado, review granted, Delgado v. Trax. 4 Cal.Rptr.3d 102, 75 P.3d 29 (2003).
[7] Because we find this alleged breach to raise triable issues of material fact precluding summary judgment, we need not consider the additional alleged breaches raised by Appellants.